**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

FILED

Sep 04 2014, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

MARCUS J. SCHNEIDER,           )
                               )
    Appellant-Defendant,       )
                               )
        vs.                )     No. 52A02-1402-CR-117
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.        )

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable Daniel C. Banina, Judge
Cause No. 52D02-1308-FC-178

**September 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following Marcus J. Schneider's guilty plea to Class D felony residential entry[1] and his admission to habitual offender[2] status, the trial court sentenced Schneider to six years of incarceration. Schneider appeals and asserts that the trial court improperly sentenced him.

We affirm and remand for correction of the sentencing statement.

## FACTS AND PROCEDURAL HISTORY

Schneider and his then-wife, Erica, divorced in January 2012. They have one child together. In August 2013, Erica and Schneider arranged to meet at a gas station to bring Schneider's clothes to him. Erica's then-boyfriend, Randy, to whom she is now married, accompanied her to meet Schneider. After their meeting, Erica and Randy went to a local bar and grill, and Schneider followed them. An altercation ensued, and Schneider was thrown out of the premises. When Erica and Randy left, Schneider was waiting, and he followed them to Erica's home. He tried to enter the home and was refused. Eventually, he got his foot in the door and entered the home. After a scuffle, Erica and Randy threw Schneider out onto the porch. The contents of his pockets fell out, including a knife. Schneider tried to gain entry again, but ran away when Erica called the police. Peru Police Department Officer Jeremy Brindle apprehended Schneider, who told the officer he had a

---

[1] *See* Ind. Code § 35-43-2-1.5. We note that, effective July 1, 2014, a new version of this criminal statute was enacted. Because Schneider committed his crime prior to July 1, 2014, we will apply the statute in effect at the time he committed his crime.

[2] *See* Ind. Code § 35-50-2-8. Like the residential entry statute, the habitual offender statute was recodified, effective July 1, 2014, but we apply the statute in effect at the time Schneider committed his crime in 2013.

knife in his pocket. Schneider told police nothing had happened and denied having entered Erica's house.

Several days later, the State charged Schneider with four counts: (I) Class C felony intimidation; (II) Class D felony residential entry; (III) Class A misdemeanor battery resulting in bodily injury; and (IV) Class B misdemeanor criminal mischief. The next day, the State added a fifth count, alleging Schneider was an habitual offender for having two prior unrelated felony convictions, one in 2006 for Class D felony auto theft and another in 2012, also for Class D felony auto theft.

In December 2013, the parties appeared for a change of plea hearing, at which the trial court was presented with a plea agreement that Schneider had signed. Schneider pleaded guilty to Count II, Class D felony residential entry and admitted to being an habitual offender. The plea agreement provided that "sentencing will be left to the discretion of the court with an agreement for a cap of six years." *Tr.* at 22; *Appellant's App.* at 84. The trial court read the charges to Schneider, and in response to each, he pleaded guilty. The trial court explained the maximum and minimum sentences that statutorily could be imposed for each conviction. With regard to the habitual offender finding, the trial court identified the two prior felonies being alleged, and then explained, "If they prove both those allegations they will have proved the Habitual Offender which could enhance the sentence up to . . . four and a half years on top of the original charge[.]" *Tr.* at 24. Schneider testified and admitted to the two prior felonies. The trial court found him guilty of the residential entry charge and found the habitual offender count to be true. *Id.* at 25. It also dismissed counts I, II, and IV, and dismissed a pending probation violation.

3

At the subsequent sentencing hearing, Schneider testified that he was on probation at the time of the current offense, and the trial court reviewed with Schneider the various juvenile and adult criminal history convictions appearing in his presentence investigation report. The trial court identified the following as aggravating factors: (1) Schneider's prior criminal record; (2) Schneider was on probation at the time of the offense; (3) he was carrying a knife; and (4) prior attempts at rehabilitation were unsuccessful, such that probation was "a disaster." *Id*. at 39. The trial court identified as mitigating factors: (1) Schneider entered a plea of guilty, saving the time and expense of trial; and (2) the mother of his child was requesting that he not be ordered to serve any incarceration. The trial court determined that the aggravating circumstances outweighed the mitigating ones, and it sentenced Schneider to three years in the Department of Correction for residential entry and three years for the habitual offender finding, for a total of six years executed. Schneider now appeals.

## DISCUSSION AND DECISION

Schneider presents one issue alleging that the trial court improperly sentenced him, but therein alleges several errors in the trial court's sentencing, contending that (1) the trial court abused its discretion when it found as an aggravator that Schneider was carrying a knife in violation of his probation, (2) the sentence is inappropriate in light of the nature of the offense and the character of the offender, and (3) the trial court improperly entered a separate sentence for the habitual offender finding rather than an enhancement of the residential entry sentence. We address each in turn.

4

## I.      Improper Aggravator

Schneider argues that the trial court abused its discretion when it found that his possession of a knife[3] constituted an aggravating circumstance.  Sentencing determinations are within the trial court's discretion and will be reversed only for an abuse of discretion. *Baker v. State*, 994 N.E.2d 306, 311 (Ind. Ct. App. 2013), *trans. denied*; *see also Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218.  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.  *Baker*, 994 N.E.2d at 311.  A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law.  *Anglemyer*, 868 N.E.2d at 490-91.  We may review both the written and oral sentencing statements.  *Harris v. State*, 964 N.E.2d 920, 926 (Ind. Ct. App. 2012), *trans. denied*.

Here, in its sentencing statement and during the sentencing hearing, the trial court identified four aggravating factors: (1) Schneider's criminal record; (2) he was on probation at the time of this offense; (3) he was carrying a knife at the time of the incident; and (4) prior attempts at rehabilitation had failed.  *Appellant's App*. at 5; *Tr*. at 39-40.  With regard to the knife, which is the only aggravator being challenged in the appeal, the trial court stated, "I'm also going to find that it's in violation . . . that he was carrying a, a knife

---

[3] It is undisputed that the knife was a regular-sized pocket knife.

at the time of the offense which is also a violation of his probation." *Tr.* at 39. On appeal, Schneider asserts that, although a pending probation violation was dismissed as part of his guilty plea agreement, the record contains no evidence of the terms of his probation or the claimed violation and, consequently, it is not known whether possession of a knife was precluded as a condition of his probation. Furthermore, he asserts, the record contains no evidence that Schneider intended to use the knife. For these reasons, Schneider claims the sentencing statement is not supported by the record and/or the trial court's reasoning is improper as a matter of law. Given the record before us, we are not persuaded.

At the sentencing hearing, Schneider told the trial court he was, in fact, on probation and conceded that he was not supposed to be carrying a knife:

> By the Court:     And you were on probation at that time?
>
> Schneider:        Correct.
>
> By the Court:     Then you should not have [had] a knife at all. Correct?
>
> Schneider:        Correct.

*Tr.* at 36. Even if, as Schneider asserts, the trial court did not know the actual terms and conditions of the probation, and thus whether possession of the knife was a violation of it, the trial court did hear Schneider admit he was not supposed to be carrying a knife. Also, contrary to Schneider's claim that there was no evidence that he intended to use the knife, Erica told police that Schneider opened the knife after it fell out of his pocket. This was a deliberate act. Randy heard Erica yell that Schneider had a knife, and Randy pulled her inside the house. They called the police, and Schneider ran away.

Even if we were to find that the trial court erred when it identified possession of the knife as an aggravator, this court has recognized that a single aggravating circumstance may be sufficient to support the imposition of an enhanced sentence. *Flickner v. State*, 908 N.E.2d 270, 274 (Ind. Ct. App. 2009). Here, Schneider does not challenge the validity of the other three stated aggravating factors, namely, his criminal history, being on probation at the time of the offense, and the fact that prior attempts at rehabilitation had failed. The two mitigating factors that the trial court identified were that he pleaded guilty and that his ex-wife did not want the State to seek punishment. The trial court, after reviewing the aggravators and mitigators, determined, "obviously aggravating outweigh mitigating." *Tr.* at 40. Even excluding the knife as an aggravator, we find no abuse of discretion in the trial court's sentencing of Schneider.

## II. Appropriateness of Sentence

Schneider pleaded guilty the Class D felony residential entry with a habitual offender enhancement. The sentencing range for Class D felonies is between six months and three years, with an advisory sentence of one and one-half years. Ind. Code § 35-50-2-7. A habitual offender is subject to an additional sentence ranging from the advisory sentence for the underlying offense to three times that advisory sentence. Ind. Code § 35-50-2-8(h). Therefore, Schneider faced up to seven and one-half years, but the State agreed to cap his sentence at six years and to dismiss three counts and a pending probation violation. Following a sentencing hearing, the trial court sentenced Schneider to three years of incarceration for the residential entry conviction and three years for the habitual offender finding. Schneider argues that he "received little benefit" from the plea

agreement, because his six-year sentence was only one and one-half years shorter than the maximum possible. *Appellant's Br.* at 12. He asks this court to reverse and impose a sentence of two years on the residential entry conviction enhanced by two years for the habitual offender finding, arguing that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).[4]

Appellate courts have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B). A defendant bears the burden of showing both prongs of the inquiry favor revision of his or her sentence. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*. When a defendant requests appellate review and revision of his sentence, we have the power to affirm, reduce, or increase the sentence. *Akard v. State,* 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is

---

[4] We note that not every sentence that is the product of a plea agreement is subject to Rule 7(B) review; only if the trial court is exercising discretion in imposing sentence may a defendant then contest on appeal the merits of that discretion on the grounds that the sentence is inappropriate. *Hole v. State*, 851 N.E.2d 302, 304 (Ind. 2006). Here, where the plea agreement provided for a sentencing cap, the trial court was required to exercise discretion in deciding whether to impose the maximum sentence allowed by the cap, or something less. Therefore, Schneider did not waive his right to contest the merits of that discretion on grounds that his sentence is inappropriate in light of the nature of the offense and the character of the offender. *Miles v. State*, 889 N.E.2d 295, 296 (Ind. 2008) (defendant did not waive appellate sentence review under invited error doctrine where defense agreed to sixty-five year cap and he was sentenced to sixty-five years); *Childress v. State*, 848 N.E.2d 1073, 1078-79 (Ind. 2006) (defendant may challenge appropriateness of sentence imposed under plea agreement that has sentencing cap or range).

inappropriate. *Former v. State,* 876 N.E.2d 340, 344 (Ind. Ct. App. 2007) (emphasis in original).

The nature of the offense inquiry compares the defendant's actions with the required showing to sustain a conviction under the charged offense. *Anderson*, 989 N.E.2d at 827. To convict Schneider of residential entry, the State had to prove that he knowingly or intentionally broke into and entered Erica's dwelling. Ind. Code § 35-43-2-1.5. Schneider claims that he was convicted of entering his ex-wife's home to discuss discipline concerns involving their child and concedes that an altercation ensued; however, he contends that both he and Randy engaged in the altercation and asserts that the record is not clear who initiated it. Therefore, he argues, the nature of the offense does not warrant the maximum six-year sentence authorized under the plea agreement. The State maintains that Schneider's conduct exceeded the elements of the residential entry statute, and we agree.

According to the record before us, Erica arranged to meet Schneider at a gas station to give him clothes that belonged to him but that had been left in her possession. After meeting him, Erica and Randy went to a bar to meet her uncle, pursuant to previous plans. Schneider followed her, went into the bar, and confronted them at their table; Erica believed Schneider was going to punch Randy. Eventually, Schneider was kicked out of the bar. When Erica and Randy later left, Schneider was waiting outside and followed them to Erica's home. They denied entry to him, but he pushed open the door and wedged his foot in the doorway, so they could not shut it. Eventually, he gained entry and a scuffle ensued. Randy was able to throw Schneider out of the front door, at which time the contents of Schneider's pockets emptied, including a pocket knife. Schneider opened it. Meanwhile,

9

Erica had reached police who arrived at the home, and, as they did, Schneider ran way but was apprehended. He told police nothing had happened, and he denied being inside Erica's home.

As to the character of offender, Schneider reminds us that he is the father of three, possibly four, children, including his son with Erica, and that he expressed remorse for his misconduct and accepted responsibility by pleading guilty. The contention that he expressed remorse is debatable; at the sentencing hearing, Schneider admitted that he was "in the wrong" in the situation, but when asked, "Is this something that would not happen again?" he replied, "I promise it wouldn't. It's not worth all this time." *Tr*. at 33. Schneider acknowledges having a juvenile and adult criminal history, but suggests that the criminal history, "while lengthy, was relatively minor, given the harshest conviction he received [w]as a Class D felony." *Appellant's Br*. at 11. We disagree that his criminal history is relatively minor. Schneider's repeated encounters with the juvenile justice system began at age twelve, and he was adjudicated delinquent on at least six occasions. He has eleven convictions as an adult, four of which are felony convictions. One of those convictions was felony non-support of a dependent, which as the State notes, "undermines any assertion that being the father of three or four children reflects positively on his character." *Appellee's Br*. at 12. According to the presentence investigation report, Schneider has been placed on probation eleven times, has violated probation seventeen times, and has never completed an adult probation successfully. The trial court stated, "[I]t seems like you could never stay out of trouble. You never completed any probation. . . . [Y]ou've been given several opportunities for alcohol and drug rehabilitation and never

10

completed any of them." *Tr*. at 39. The probation department reported that Schneider was not an acceptable candidate for the community corrections program.

We are not persuaded that Schneider's six-year sentence, which was within the terms of his plea agreement, is inappropriate in light of the nature of the offense or the character of the offender.

### III. Habitual Offender Sentencing

At the sentencing hearing, the trial court imposed a sentence of three years for the residential entry conviction and three years for the habitual offender finding, for a total of six years executed, stating, "[S]o it's gonna be three years on Count V, that's running consecutive to Count II for a total of six years Department of Correction." *Id*. at 40. The subsequent written sentencing statement likewise indicated a three-year sentence "on each count" and ordered them to "run consecutively." *Appellant's App*. at 34. Schneider argues, and the State concedes, that the trial court entered a separate three-year sentence for the habitual offender finding to be served consecutive to the sentence for the residential entry conviction, rather than a sentence enhancement. Schneider is correct that this was improper.

A habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. *See* Ind. Code § 35-50-2-8. Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Harris*, 964 N.E.2d at 927 (citing *Hendrix v. State,* 759 N.E.2d 1045, 1048 (Ind. 2001)). Therefore, we remand for correction of the sentencing order so that it reflects that the three-year habitual offender enhancement serves as an enhancement of the Class D felony

11

residential entry conviction.  *See Bauer v. State*, 875 N.E.2d 744, 747 (Ind. Ct. App. 2007) (illustrating remand is appropriate remedy where trial court erroneously treats habitual offender enhancement as separate sentence), *trans. denied*.

Affirmed and remanded.

MAY, J., and BAILEY, J., concur.