## FOR PUBLICATION



FILED
Mar 27 2012, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KELLY N. BRYAN**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HANE C. HARRIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A04-1108-CR-391 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable John M. Feick, Judge
Cause No. 18C04-0904-FA-5

**March 27, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Hane C. Harris repeatedly molested the young daughter of his girlfriend. A jury found Harris guilty of class A felony child molesting, class C felony child molesting, and class D felony child solicitation. The jury also found Harris to be a habitual offender. The trial court sentenced Harris to a total sentence of eighty-one years, with seventy-nine years executed. On appeal, Harris claims that he was denied his right to confrontation guaranteed by both our federal and state constitutions because the victim was permitted to testify at trial via closed-circuit television. Harris also contends that the trial court abused its discretion in imposing consecutive sentences. Finding no constitutional violations and further concluding that Harris has not established that the trial court abused its discretion in imposing consecutive sentences, we affirm. However, we remand for correction of the sentencing order regarding the habitual offender enhancement.

**Facts and Procedural History**

T.D.S. was born on July 21, 2000. When T.D.S. was between the ages of seven and eight years old, T.D.S. lived in an apartment with her mother, S.D., and her mother's boyfriend, Harris. T.D.S. slept in the same bedroom as S.D. and Harris, although she slept in a separate bed. On several different occasions while T.D.S. was lying in her bed, Harris put his hand under T.D.S.'s shirt and touched her chest. On other occasions while T.D.S. was lying in her bed, Harris touched T.D.S. on her "private part" both with his hand and with his

penis.[1] Tr. at 149. On more than one occasion, while S.D. was at work, Harris came into the bedroom while T.D.S. was watching television and playing with stuffed animals. Harris pulled down T.D.S.'s pants and underwear and then pulled down his own pants and underwear. Harris "put spit" on his hand and touched T.D.S.'s private part with his finger. *Id*. at 158-59. Harris then put his penis in T.D.S.'s private part. This hurt T.D.S. On some occasions, Harris would lift up T.D.S.'s shirt and put his mouth on her breast. Harris would often kiss T.D.S. on the lips, and this would make her feel "nasty." *Id*. at 163. One time, Harris took T.D.S.'s hand and placed it on his penis. When T.D.S. tried to pull her hand away, Harris grabbed her hand and put it back on his penis. Harris told T.D.S. that he would kill her and her mother if she told anyone about these encounters. T.D.S. kept the molestations a secret for a "long time" but she finally told her grandmother in April 2009. *Id*. at 169. Subsequent physical examinations of T.D.S. revealed acute injuries to T.D.S.'s hymen and anus consistent with some type of penetration.

On April 17, 2009, the State charged Harris with two counts of class A felony child molesting, class C felony child molesting, and class D felony child solicitation. Thereafter, on April 27, 2009, the State also filed a habitual offender allegation against Harris. Prior to trial, the State moved to have T.D.S. declared a protected person so that her testimony could be taken outside of Harris's physical presence via videotape or closed circuit television. On May 16, 2011, the trial court held a protected person hearing on the State's motion during

---

[1] Using an anatomical diagram during her testimony, T.D.S. identified her vagina as what she refers to as her "private part." Tr. at 149.

which the court heard testimony from T.D.S.'s grandmother, a psychiatrist, and a behavioral clinician regarding the serious emotional harm that T.D.S. would suffer if required to testify in Harris's presence. Following the hearing, the trial court granted the State's motion.

A bifurcated jury trial was held on June 6 and 7, 2011. Prior to T.D.S.'s testimony, Harris objected to the trial court allowing T.D.S. to testify via closed-circuit television, claiming that it would impair his ability to cross-examine her and would also impair the jury's ability to determine credibility. The trial court overruled the objection and permitted T.D.S. to testify via closed-circuit television. At the conclusion of the trial, the trial court dismissed one count of class A felony child molesting, and the jury found Harris guilty of the remaining charges. The trial proceeded to the habitual offender phase, after which the jury found Harris to be a habitual offender.

Sentencing occurred on July 18, 2011. The trial court found seven aggravating factors and two mitigating factors. Concluding that the aggravators outweighed the mitigators, the trial court sentenced Harris to forty years for class A child molesting. The trial court entered a separate sentence of thirty years based upon the habitual offender finding and ordered that sentence to be served consecutive to the class A felony child molesting count.[2] The court sentenced Harris to eight years, with one year suspended, for class C felony child molesting, and three years, with one year suspended, for class D felony child solicitation, each to be

_____

[2] Although in its written sentencing order the trial court correctly titled this the "Habitual Offender Enhancement," the court's written and oral sentencing statements indicate that it actually entered a separate consecutive thirty-year sentence based on the habitual finding rather than an enhancement. Appellant's App. at 265, Tr. at 572.

served consecutive to the other counts, for a total sentence of eighty-one years, with seventy-nine years executed. This appeal ensued.

**Discussion and Decision**

*I. Victim Testimony*

Harris contends that the trial court erred when it permitted T.D.S. to testify at trial via two-way closed-circuit television. Specifically, Harris argues that the State presented insufficient evidence that T.D.S. would suffer serious emotional harm if required to testify in his physical presence, and therefore permitting her to testify outside of his physical presence violated his federal and state constitutional rights. We disagree.

We begin by noting that the admission of evidence is within the sound discretion of the trial court. *Broude v. State*, 956 N.E.2d 130, 134 (Ind. Ct. App. 2011), *trans. denied* (2012). We will not reverse a trial court's decision on whether to admit evidence absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*.

Harris concedes that by virtue of her age at the time of trial, ten-year-old T.D.S. was a "protected person" who would be eligible to testify via closed-circuit television, provided the criteria set forth in Indiana Code Section 35-37-4-8 were met.[3] That section provides in relevant part:

---

[3] Indiana Code Section 35-37-4-6 provides that the victim of a sex crime, who is a child less than fourteen years of age, is a "protected person" for purposes of the statute.

5

(c) On the motion of the prosecuting attorney, the court may order that the testimony of a protected person be taken in a room other than the courtroom, and that the questioning of the protected person by the prosecution and the defense be transmitted using a two-way closed circuit television arrangement that :

(1) allows the protected person to see the accused and the trier of fact; and

(2) allows the accused and the trier of fact to see and hear the protected person.

….

(e) The court may not make an order under subsection (c) or (d) unless:

(1) the testimony to be taken is the testimony of a protected person who:

….

(B) is found by the court to be a protected person who should be permitted to testify outside the court room because:

(i) the court finds from the testimony of a psychiatrist, physician, or psychologist and any other evidence that the protected person's testifying in the physical presence of the defendant would cause the protected person to suffer serious emotional harm and the court finds that the protected person could not reasonably communicate in the physical presence of the defendant to the trier of fact;

(ii) …; or

(iii) evidence has been introduced concerning the effect of the protected person's testifying in the physical presence of the defendant, and the court finds that it is more likely than not that the protected person's testifying in the physical presence of the defendant creates a substantial likelihood of emotional or mental harm to the protected person;

Ind. Code § 35-37-4-8.

6

This statutory provision is part of what is known as the Protected Person Statute, a statute that is generally described as an effort to spare children the trauma of testifying in open court against an alleged sexual predator. *See Tyler v. State*, 903 N.E.2d 463, 466 (Ind. 2009). However, application of the Protected Person Statute necessarily implicates both federal and state constitutional rights. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him…." "The essential purpose of the Sixth Amendment right of confrontation is to ensure that the defendant has the opportunity to cross-examine the witnesses against him." *Howard v. State*, 853 N.E.2d 461, 465 (Ind. 2006). Article 1, Section 13 of the Indiana Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right … to meet the witnesses face to face…." Because Indiana's clause contains both the right to cross-examine and the right to meet witnesses face to face in the courtroom during trial, Indiana's right to confrontation is known to be more "generous" but can be said to encompass the federal right which only guarantees an opportunity to cross-examine witnesses. *See Pierce v. State*, 677 N.E.2d 39, 48 n.3 (Ind. 1997); *Gardner v. State*, 641 N.E.2d 641, 643 (Ind. Ct. App. 1994).

Our supreme court has held that Indiana Code Section 35-37-4-8, when properly construed, satisfies the requirements of the federal confrontation right. *Brady v. State*, 575 N.E.2d 981, 986 (Ind. 1991). Moreover, "while there is something unique and important" about the face-to-face requirement of our state constitution, a two-way closed-circuit

television arrangement does not compromise a defendant's state constitutional right to meet witnesses face-to-face. *See id.*

Here, Harris does not quibble with the constitutionality of Indiana Code Section 35-37-4-8 or the use of the two-way closed-circuit television for child victim testimony generally. Instead, he argues that the State failed to make the required evidentiary showing pursuant to subparagraph (B)(i) or B(iii) of the statute to justify allowing T.D.S. to testify outside of his physical presence. Therefore, he argues that the trial court improperly applied the statute and, as a result, violated his federal and state constitutional rights when it permitted T.D.S. to testify via closed-circuit television.

During the protected person hearing, the State presented ample testimony to support the trial court's conclusion that testifying in the physical presence of Harris would cause T.D.S. to suffer serious emotional harm and that T.D.S. could not reasonably communicate to the jury while in the physical presence of Harris. Psychiatrist Snieguole Radzeviciene testified that T.D.S. suffered from post-traumatic stress disorder as a result of the molestations. Dr. Radzeviciene stated that testifying in Harris's physical presence would cause T.D.S. to suffer extreme stress. When asked whether T.D.S. would be able to testify in a courtroom with Harris, Dr. Radzeviciene stated:

> As I said … that situation is extremely stressful for her. Plus, she looked to me, she acted like, emotionally less mature than she's expected to be. And I'm afraid that her level of distress would be too significant for her to be able to usefully participate in this. Plus, it would leave a lot of anxiety.

Tr. at 56-57. Dr. Radzeviciene opined that use of closed-circuit television would not only protect T.D.S., but would also be more useful for the court due to T.D.S.'s inability to

8

participate usefully if required to testify in Harris's presence. When asked specifically whether there was a substantial likelihood that testifying in Harris's physical presence would cause T.D.S. serious emotional harm, Dr. Radzeviciene answered, "I think so." *Id*. at 65.

Behavioral clinician Lavania Burrous began working with T.D.S. in November 2010. Burrous testified that T.D.S. would become very anxious and quiet whenever questioned about the molestations. Burrous stated that when she asked T.D.S. what would happen if she ever saw Harris in person again, T.D.S. would "clam up," clench her fists, and shake with anxiety. *Id*. at 77. Burrous testified that she believed T.D.S. would suffer serious emotional harm if she had to testify in the physical presence of Harris.

Finally, T.D.S.'s grandmother, Joyce Stone, testified that T.D.S. had nightmares that Harris was going to kill her mother. Stone stated that T.D.S. was a very scared little girl and has a lot of anxiety. T.D.S. was afraid to sleep alone and has had problems with her bowel movements. Stone testified that T.D.S. would suffer emotional harm if forced to testify at a jury trial in Harris's presence.

This evidence was more than sufficient to support the trial court's determination pursuant to subparagraph B(i) of Indiana Code Section 35-37-4-8 that testifying in the physical presence of Harris would cause T.D.S. to suffer serious emotional harm and that she could not reasonably communicate to the jury in the physical presence of Harris. In addition, the evidence supports the trial court's determination pursuant to subparagraph B(iii) that it is more likely than not that T.D.S's testifying in the physical presence of Harris creates a substantial likelihood of emotional or mental harm to T.D.S.

On appeal, Harris makes much of the fact that Dr. Radzeviciene was the only "psychiatrist, physician, or psychologist" who testified regarding the potential for emotional harm to T.D.S. However, the statute makes clear that the trial court may gather information "from the testimony of a psychiatrist, physician, or psychologist *and any other evidence*" that the protected person's testifying in the physical presence of the defendant would cause the protected person to suffer serious emotional harm. *See* Ind. Code § 35-37-4-8(B)(i) (emphasis added). Harris essentially asks that we reweigh the evidence in his favor, which we may not do on appeal.

There was sufficient evidence to support the trial court's decision, pursuant to Indiana Code Section 35-37-4-8, to permit T.D.S. to testify outside of Harris's physical presence, and we cannot say that the trial court's decision constituted a manifest abuse of discretion such that Harris was denied a fair trial. As noted by the State, despite the fact that T.D.S. was not physically present in the courtroom, the record reveals that Harris conducted a lengthy cross-examination of T.D.S. during trial. Harris could see his accuser, and she could see him and the jury. Harris has failed to show that the trial court violated his federal or state constitutional rights when it permitted T.D.S. to testify via closed-circuit television.

## II. Sentencing

Harris maintains that the trial court abused its discretion in imposing consecutive sentences. Sentencing determinations are within the trial court's discretion and will be reversed only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218. An abuse of discretion occurs when the trial

court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at 490-91. It is within the trial court's discretion to impose consecutive sentences, but the trial court must find at least one aggravating factor before imposing consecutive sentences. *Owens v. State*, 916 N.E.2d 913, 917 (Ind. Ct. App. 2009). We may review both the written and oral sentencing statements in order to identify the findings of the trial court. *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007).

In both its written and oral sentencing statements, the trial court found the following seven aggravating factors: (1) Harris's adult criminal history, which includes ten felony and ten misdemeanor convictions and one habitual offender finding; (2) the substantial degree of care and planning on Harris's part in committing the current crimes; (3) Harris was on probation at the time of the current offenses; (4) prior attempts at correctional treatment and rehabilitation through probation have been unsuccessful; (5) the current crimes were particularly devastating to T.D.S. and her family; (6) Harris was in a position of trust with T.D.S.; and (7) Harris threatened to harm T.D.S. if she told anyone about the crimes. The trial court identified three mitigating factors, which included: (1) Harris's age of forty-four; (2) imprisonment would result in undue hardship on Harris's dependents; and (3) Harris has tried to meet family and financial obligations by maintaining gainful employment. In light

11

of the overwhelming number of aggravators versus mitigators, the trial court determined that consecutive sentences were appropriate.

Harris's sole contention in this regard is that the trial court failed to sufficiently "articulate any reasons for imposing consecutive sentences." Appellant's Br. at 12. This argument is unavailing. As noted above, the trial court need only find one aggravating factor before exercising its discretion to impose consecutive sentences. *See Owens*, 916 N.E.2d at 917. Harris does not challenge the validity of or the evidence supporting the seven stated aggravating factors. To the extent that Harris challenges the weight assigned to those factors, this is no longer a viable argument on appeal. *See Anglemyer*, 868 N.E.2d at 490-91. We find no abuse of discretion in the trial court's imposition of consecutive sentences.

However, as noted by the State, the trial court did erroneously enter a separate thirty-year sentence for the habitual offender finding to be served consecutive to the sentence for the class A felony child molesting count. It is well settled that a habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. *See* Ind. Code §35-50-2-8. Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001). Therefore, we remand for correction of the sentencing order so that it reflects that the

thirty-year habitual offender enhancement serves as an enhancement of the class A felony child molesting count.[4]

Affirmed and remanded.

DARDEN, J., and VAIDIK, J., concur.

---

[4] Indiana Code Section 35-50-2-8(h) provides that "[t]he court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years." Because the trial court here intended a thirty-year habitual offender enhancement, upon remand, that enhancement must be attached to the underlying class A felony count as opposed to the underlying class C or class D counts. *See* Ind. Code §§ 35-50-2-4, -6, and -7 (the advisory sentence for class A felony is thirty years, the advisory sentence for class C felony is four years, and the advisory sentence for class D felony is one and one-half years).