## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Chris Palmer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard Lee Nicholson, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | January 12, 2016 <br><br> Court of Appeals Case No. <br> 48A02-1506-CR-605 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. <br> 48C04-1408-FC-1592 |

**Brown, Judge.**

[1] Richard Lee Nicholson appeals his sentence for nonsupport of a dependent child as a class C felony. Nicholson raises two issues which we revise and restate as:

> I. Whether the trial court abused its discretion in sentencing him; and
>
> II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

[2] Between June 15, 1999, and June 30, 2014, Nicholson knowingly failed to provide support to his dependent child giving rise to a child support arrearage of $27,482.72 as of June 30, 2014. On August 29, 2014, the State charged Nicholson with nonsupport of a dependent child as a class C felony. On May 18, 2015, the court held a guilty plea and sentencing hearing at which Nicholson pled guilty as charged. The court heard arguments as to sentencing and found that the amount of the arrearage was nearly twice that required to constitute a class C felony, that the amount of the arrearage and Nicholson's criminal history were aggravating circumstances, and that Nicholson's guilty plea without the benefit of a plea agreement and acceptance of responsibility were mitigating circumstances. The court sentenced him to eight years with four years suspended to probation and ordered that two years of his executed time be served in the Department of Correction and two years at the Madison County Work Release Facility.

## Discussion

### I.

[3] The first issue is whether the trial court abused its discretion in sentencing Nicholson. We review a trial court's sentencing determination for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.* at 491. We may review both the written and oral sentencing statements in order to identify the findings of the trial court. *Harris v. State*, 964 N.E.2d 920, 926 (Ind. Ct. App. 2012) (citing *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007)), *trans. denied*.

[4] Nicholson contends that the trial court abused its discretion in sentencing him to the maximum allowable sentence in order to send a message to other potential offenders. At the sentencing hearing, Nicholson testified that his plan

was to try to have his child support paid back as quickly as possible and that he had a definite job and additional possible jobs. When asked what had changed to make paying child support a priority, Nicholson stated:

> . . . over the last six (6) months since I've been brought back to Indiana, I realized that this is a necessity that's gotta be taken care of. Since I've been released from the penitentiary in Texas in 2008, um, I made a lot of progress. Like I said, I've got a valid driver's license, I've enrolled myself in college. I've been doing a lot more in the last year than I've ever done before to try to get my life together. So this is just one more thing I'm gonna have to work at.

Transcript at 13-14.

[5] After hearing arguments, the court stated:

> Mr. Nicholson, the court has to consider a lot of factors in determining what kind of sentence is appropriate for this offense, . . . as has been discussed a little bit by the lawyers, that this offense is a little bit different than other offenses. In someways [sic] it doesn't seem to lead directly to the kind of threat to public safety and harm to other people that other crimes do, but it's also different in that this doesn't involve a momentary lapse of judgment or a bad decision you make one (1) intoxicated night. Those things may be criminal too but this is an ongoing pattern of behavior. One of the most sacred obligations that a human can have is to care for their offspring, and day in day out, year after year, you continued to thumb your noise [sic] at that obligation that you had. And that had consequences for other people . . . . And that went on and on and on and you did nothing about it. The civil collection process worked diligently as shown in the CCS that's part of the pre-sentence investigation report. There were efforts that were tried in the support court to remind you of the obligation that you had, and to try to enforce

that obligation. They used some of the post [sic] powerful civil enforcement tools that the [sic] had. They issued body attachments for your arrest, they punished you with short term incarceration to try to get you refocused and get your attention. And you chose to ignore all that. It's also relevant the amount of the support that's owed here. And an aggravating factor is that the amount of the support arrearage here is nearly twice that which is required to constitute a C Felony. . . . When you're not there paying support, and you're absent, your [sic] also not doing the other things that a parent should do that helps that child find its way in the world and learn how to live in the world, and there are consequences for that. There need to be strong consequences, Mr. Nicholson. As the prosecutor pointed out, he's heard my speech before so he knows that *I tell people this is not a collection court. We are far past that. We are here to be one of the things that helps the collection court work. In order for that collection process to work there has to be a credible threat that if you thumb your nose at it, year after year, and don't worry about the obligation you have to your child, there will be a reckoning, and there will be consequences. So we're here to help other people understand that obligation in part*. . . .

*Id.* at 18-20 (emphasis added).

[6] Nicholson asserts that the emphasized portion of the court's comments suggest vindictive justice rather than any attempt to reform him and that the implication is that he is being punished in order to set an example for other potential future offenders. He also argues that rehabilitation for him would mean an opportunity to begin repaying his obligation to the State immediately rather than after two years of incarceration. The State argues that, when viewed in context, it is clear that the court's statements described the nature and circumstances of Nicholson's offense and responded to Nicholson's argument that he was a changed man.

[7]     Based on the record, in light of Nicholson's testimony and the various efforts to collect the accumulated arrearage, we cannot say that the court's comments show that its sentence of eight years with four years executed, with two years of the executed term served on work release, was entered to be vindictive or merely to set an example for other potential future offenders. The court did not abuse its discretion in sentencing Nicholson.[1]

## II.

[8]     The next issue is whether Nicholson's sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[9]     Nicholson maintains that his offense was not the worst sort of offense for which a maximum sentence would be warranted. He argues that his offense was one of neglect of financial responsibility rather than a deliberate violent attack on

---

[1] To the extent Nicholson cites Article 1, Section 18, of the Indiana Constitution, which provides that "[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice," we observe that the Indiana Supreme Court has held that "particularized, individual applications are not reviewable under Article 1, Section 18 because Section 18 applies to the penal code *as a whole* and does not protect fact-specific challenges." *Ratliff v. Cohn*, 693 N.E.2d 530, 542 (Ind. 1998), *reh'g denied*.

another person, that he pled guilty without the benefit of any plea agreement, and that he secured employment and had prospects for additional part-time work as well so that he could repay his obligation. He states that his biological father died, his stepfather was an abusive alcoholic, that he began abusing alcohol at the age of fifteen or sixteen, and that he fathered the child in this case when he was sixteen or seventeen years old. He also argues that his adult criminal history primarily consists of minor offenses until he was sentenced for robbery in 2008, that while in prison he participated in an inpatient treatment program, and that he has not committed further offenses since his release.

[10] The State notes that the amount of the support arrearage was nearly twice that required to constitute a class C felony, and that, despite being issued four contempt citations and being incarcerated for failing to pay, Nicholson did not change his behavior in the slightest. It further contends that Nicholson's character does not warrant revision as he has no interest in providing financial or emotional support for his child, he has amassed quite a criminal history, and he has violated conditions of probation, parole, and work release.

[11] To the extent Nicholson argues he received the maximum sentence, we note that the court suspended four years of his sentence and ordered that two years of his executed sentence be served on work release. Thus, we cannot say that he received the maximum executed sentence. *See Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010) (noting that in reviewing sentences pursuant to Ind. Appellate Rule 7(B), we may consider not only the appropriateness of the aggregate length of the sentence, but also "whether a portion of the sentence is

ordered suspended or otherwise crafted using any of the variety of sentencing tools available to the trial judge").

[12]     Our review of the nature of the offenses reveals that, between June 15, 1999, and June 30, 2014, Nicholson knowingly failed to provide support to his dependent child giving rise to unpaid child support due and owing in the amount of $27,482.72 as of June 30, 2014. The chronological case summary for the paternity action indicates that a voluntary petition to establish paternity was filed in June 1999 and that Nicholson was ordered to pay support in the amount of thirty-seven dollars per week commencing June 18, 1999. An entry in August 1999 states that Nicholson had an arrearage of $259 and that he was ordered to pay ten dollars per week towards the arrearage in addition to his weekly support obligation of thirty-seven dollars. Additional entries in the paternity action indicate that Nicholson was found in contempt in September 1999 at which time he had an arrearage of $407, in February 2000 at which time his arrearage was $968, in May 2001 when his arrearage was $3,233, and in August 2003 when his arrearage was $7,300.60. An entry in August 2004 shows Nicholson had an arrearage of $8,342.27 and the court issued a body attachment. An entry in June 2008 states that he had an arrearage of $15,850.22 and that a body attachment would issue. An entry in July 2014 states that Nicholson's total arrearage was $27,482.22, that he was in contempt of court, and that he had been incarcerated between August 2008 and 2013.

[13]     Our review of the character of the offender reveals that Nicholson pled guilty without the benefit of a plea agreement. He testified at the sentencing hearing

that the PSI, which was prepared on May 4, 2015, stated he had reported he did not have a plan to pay child support and did not have employment, and that, since then, he was able to develop a plan and he now had one definite job and additional prospects for other jobs. He stated that he has been assured he has a position available with My Personal Gardener as soon as he was released, that he worked for Two Guys and a Truck ten or fifteen years ago and they are hiring drivers now, and that he has a construction background and could find construction work if those two failed. He indicated that his plan was to try to have his child support paid back as quickly as possible starting on a weekly basis, that since 1999 he had not been able to develop a plan, and that "[s]ince '99 I hadn't really planned on much of anything. I've been screwing up a lot." Transcript at 12. He stated that he moved to North Carolina where his brother lives, he obtained a job there within twenty-four hours, he was arrested on this charge before he received his first paycheck, he has made a lot of progress since he was released from the penitentiary in Texas, and that, since he was brought back to Indiana, he "realized that this is a necessity that's gotta be taken care of." *Id.* at 13.

[14] According to the PSI, as a juvenile Nicholson was adjudicated delinquent for leaving home without the permission of a parent or guardian, for which he was placed on formal probation, and charged with a curfew violation, for which he was warned and released. As an adult, he committed the offense of operator never licensed as a class C misdemeanor and several counts of check deception in 1999. For check deception, he first received suspended sentences which were

later reinstated in whole or in part after he admitted to having violated his probation. He was sentenced for possession of marijuana as a class A misdemeanor and possession of an alcoholic beverage by a minor in 2000, theft as a class D felony in 2003, possession of marijuana as a class A misdemeanor in 2004, driving while intoxicated in 2005, public intoxication as a class B misdemeanor and battery resulting in a bodily injury as a class A misdemeanor in 2006, public intoxication as a class B misdemeanor in 2007, robbery as a second degree felony in Nueces County, Texas, in 2008, for which he was sentenced to five years in the Texas Department of Criminal Justice, and criminal mischief in April 2015.

[15] The PSI also states that Nicholson had been "placed at the Hawthorne House a couple of times," that he "has been on probation and parole and has violated both, resulting in at least partial revocation of his suspended sentences," and that he has "been sentenced to work release and has violated the same." Appellant's Appendix at 43. The PSI further indicates that Nicholson reported that his father is deceased and that his mother's husband is an alcoholic and abusive, causing him to leave home on a number of occasions. He further reported that he began using alcohol on a regular basis at age fifteen or sixteen, he last used alcohol in December 2014, he has used marijuana, cocaine, Xanax, and Klonopin, he participated in a seven-month inpatient treatment program at the Texas Department of Correction in 2013, and that he does not believe he has any issues with chemical addictions at present and does not see the need for additional substance abuse treatment.

After due consideration, we conclude that Nicholson has not sustained his burden of establishing that his sentence of eight years with four years executed, with two years of the executed term served on work release, is inappropriate in light of the nature of the offense and his character.

## *Conclusion*

For the foregoing reasons, we affirm Nicholson's sentence for nonsupport of a dependent child as a class C felony.

Affirmed.

Kirsch, J., and Mathias, J., concur.