FILED

May 27 2020, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian Kinman,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 27, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2718<br><br>Appeal from the Fayette Circuit Court<br><br>The Honorable Hubert Branstetter, Jr., Judge<br><br>Trial Court Cause No.<br>21C01-1802-F5-131<br>21C01-1906-F5-467 |

**May, Judge.**

[1] Brian Kinman appeals the trial court's denial of both his pre-sentence oral motion to withdraw his guilty plea and his post-sentence written motion to withdraw his guilty plea. We affirm.

# Facts and Procedural History

[2] On February 14, 2018, the State charged Kinman with Level 5 felony dealing in a narcotic drug[1] and Level 6 felony maintaining a common nuisance[2] under cause number 21C01-1802-F5-131 ("Cause 131"). On February 16, 2018, the State alleged Kinman was a habitual offender[3] under Cause 131. On June 28, 2019, the State charged Kinman with Level 5 felony burglary,[4] Level 6 felony residential entry,[5] Class A misdemeanor theft,[6] and Class B misdemeanor criminal mischief[7] under cause number 21C01-1906-F5-467 ("Cause 467").

[3] On July 3, 2019,[8] Kinman entered a plea agreement with the State whereby he would plead guilty to Level 5 felony possession of a narcotic drug and admit

---

[1] Ind. Code § 35-48-4-1.

[2] Ind. Code § 35-45-1-5.

[3] Ind. Code § 35-50-2-8.

[4] Ind. Code § 35-43-2-1.

[5] Ind. Code § 35-43-2-1.5.

[6] Ind. Code § 35-43-4-2(a).

[7] Ind. Code § 35-43-1-2(a).

[8] The parties entered into an earlier agreement whereby Kinman would plead guilty to Level 5 dealing in a narcotic drug and admit being a habitual offender under Cause 131, would plead guilty to Level 5 felony

being a habitual offender under Cause 131 and would plead guilty to Level 6 felony residential under entry Cause 467. The plea agreement called for an aggregate sentence of ten and a half years, specifically meted out as:

4. The defendant shall plead guilty to the following charge(s) and receive the following sentence:

21C01-1802-F5-131    Dealing in a Narcotic Drug, 5 Felony      4 years executed; $200 drug interdiction fee; Costs.
*Consecutive to:*

Habitual Offender      4 years executed; $200 drug interdiction fee; Costs.
*Consecutive to:*

21C01-1906-F5-467    Burglary, 6 Felony    2 1/2 years executed; Costs.

Residential Entry, 6 Fel

*Remaining counts dismissed.*
~~State does not object to work release.~~

(App. Vol. II at 34.) The trial court held a plea hearing the same day.

[4]    At the plea hearing, the trial court recited the plea agreement to Kinman:

> Mr. Kinman, we're here because a plea agreement was filed today and looking at that the State's F5-131 you'd be pleading to [dealing] a narcotic drug as a Level 5 felony, four years executed, $200.00 drug intradiction [sic] fee and costs consecutive to a habitual offender enhancement four years executed, $200.00 drug intradiction [sic] fee and costs to be consecutive to F5-467 residential entry as a Level 6 felony, two and a half years executed, costs, remaining counts would be dismissed.

(Tr. Vol. II at 13.) Kinman acknowledged the terms of the plea agreement as set forth by the trial court and indicated that he intended to "withdraw [his]

---

burglary under Cause 467, and would be sentenced to twelve years with the possibility of work release. Community Corrections refused to accept Kinman for work release, so that plea agreement was not ratified.

earlier pleas of not guilty and enter pleas of guilty," (*id*. at 14), and that he understood all the rights he was giving up by pleading guilty. He also indicated he was not under the influence of drugs or alcohol, he understood the plea agreement, he did not suffer from an emotional or mental disability, and he spoke with his attorney regarding the plea agreement before signing it.

[5] Kinman then requested a mental evaluation "because it's obvious that my life has been a certain way and I can't get past that." (*Id*. at 16.) After discussion, the parties and the court concluded the mental evaluation Kinman was requesting was not related to his capacity to consent to the plea agreement, but instead was a request for mental health treatment as part of his sentence. The court then asked Kinman if his guilty plea was his "own free choice and decision" and "what [he] want[s] to do today" to which Kinman answered in the affirmative. (*Id*. at 19.) The trial court ordered a pre-sentence investigation report and told Kinman's counsel to contact the trial court to schedule a sentencing hearing.

[6] The trial court held a sentencing hearing on August 2, 2019, and Kinman did not appear. The parties discussed Kinman's whereabouts:

> [Trial Court]:      Okay, [Defense Counsel], do you know anything about his whereabouts?
>
> [Defense Counsel]: His whereabouts I do not. The last time I heard where he was was [sic] in Indianapolis at the hospital.

| | |
|---|---|
| [State]: | And we've confirmed that he was released. |
| [Trial Court]: | Okay. |
| [Defense Counsel]: | So, I don't know where he is. |

(*Id*. at 23.) Based thereon, the trial court issued a warrant for Kinman's arrest and indicated a new sentencing hearing would be scheduled when Kinman was located. Kinman subsequently turned himself in and was released on his own recognizance.

[7] On October 18, 2019, the trial court held a sentencing hearing. Kinman and his counsel appeared. At the beginning of hearing, Kinman's counsel stated, "Mr. Kinman has told me that he wishes to withdraw his former plea of guilty[,]" (*id*. at 24), and then counsel asked to withdraw from the case because he and Kinman were "not on the same page" and "both agree that probably he needs a different lawyer." (*Id*.) The State argued the matter had already been resolved because a guilty plea had been entered and requested the trial court go forward with sentencing as scheduled. Kinman interjected, and he and the State argued about the terms of his plea agreement:

| | |
|---|---|
| [Kinman]: | Your Honor, I have to object to what she just said because in my plea agreement under Indiana Code 35-50-2-8 section J it states habitual offender status is uh, is a criminal enhancement, it's not a separate crime therefore it has to be ran concurrent with the charges and my plea agreement she has it consecutive – |

[State]:      That's not what the statute says Your Honor.

[Kinman]:     So she actually wrote (inaudible).

[State]:      The statute says – the plea agreement should read
              that it's not a consecutive sentence, that it's an
              enhanced sentence.

[Kinman]:     Right.

[State]:      However, may I please – however, um, enhanced
              and consecutive for all intense [sic] and purposes
              does the same thing and I have written it as
              consecutive in the past because I think it's clearer to
              say that it's a consecutive sentence because I think
              it's clearer in everybody's minds it doesn't run
              concurrent.  That statute that he is um, referred to
              read and I've gotten I don't know maybe ten letters
              and motions from defendants at the jail who
              misunderstand this[.] J says "habitual offender is a
              status that results in an enhanced sentence.  It is not
              a separate crime and does not result in a consecutive
              sentence.  The Court shall attach the habitual
              offender enhancement to the felony conviction with
              the highest sentence imposed and specify which
              felony count is being enhanced.  If the felony
              enhanced by the habitual determination is set aside
              or vacated the Court shall re-sentence the person
              and apply the enhancement to the next highest
              felony conviction.". [sic] Um, it does not run
              concurrent.  Mr. Kinman is reading that statute
              wrong um, and the only thing that really needs to
              happen to make this um, right is your sentencing
              order is in fact supposed to say that the habitual
              offender count attaches to the dealing in a narcotic

drug a 5 felony and enhances that sentence by four years.

(*Id*. at 24-5.)  The trial court told Kinman that the "enhancement is going to be consecutive," acknowledged that the habitual offender adjudication "results in a higher sentence, an enhanced sentence," and denied counsel's request to withdraw his appearance and counsel's oral motion to withdraw Kinman's guilty plea.  (*Id*. at 25.)

When asked if he had anything else to say before the trial court accepted his guilty plea and sentenced him accordingly, Kinman stated:

> Yeah, your Honor, uh, I mean word verbatim (inaudible) it's consecutive to and that's the way it's listed in there and that's what the State's and I feel like that that's just a (inaudible) the way she's interpreting it is mistaken because not only there's me there's ten other guys in my block and twenty other people before me that have been stroked on this and it's clearly breaking the law and if I broke the law I'm being held responsible so why is she not being held responsible to the law that she's supposed to represent.  I want to go to trial.

(*Id*. at 26) (errors in original).  The trial court then heard testimony from the person whose house Kinman illegally entered.  The trial court then stated:

> Well, at this time I'm going to accept the plea agreement and sentence you to the terms of the plea agreement in F5-131 dealing in a narcotic drug a Level 5 felony, four years executed, $200.00 drug intradiction [sic] fee and costs and habitual offender enhancement will be consecutive, four years executed, $200 drug intradiction [sic] fee and costs consecutive to [F5-]467 burglary as

a Level 6 felony two and a half years executed and costs remaining counts will be dismissed.

(*Id*. at 28) (errors in original).

[9] On November 7, 2019, Kinman filed a *pro se* petition to vacate judgment and withdraw his plea, arguing:

> The Plea agreement of said cause numbers is void due to (A) The incompetency of myself on the date of, 7-3-19; when I asked the court for a full mental health evaluation before my plea bargain was accepted & a guilty plea entered, but was not given, therefore making the acceptance of my plea injust & void. (B) The ineffectiveness of my court appointed lawyer, John Bodwell; who tried to remove himself not once, but twice. On dates, 9-16-19 & 10-18-19, but was denied and forced to represent me. Not giving me my constitutional right to proceed pro se. Making the proceeding of my defense of said cause numbers ineffective. (C) The illegal, unlawfulness, and excessive sentence that is being imposed on, Cause Number, 21C01-1802-F5-131, due to the breaking of law under, I.C. 35-50-2-8, section (j). I quote, "A habitual offender is a status that results in an enhanced sentence. It is not a seperate crime & does not result in a consecutive sentence."

(App. Vol. II at 97) (errors in original).[9] On November 18, 2019, Kinman filed a *pro se* petition to amend his sentence. On the same day, Kinman filed a *pro se* motion for transport to attend the hearing for the petition to amend his sentence once that hearing was scheduled. On November 18, 2019, the trial court denied

---

[9] This motion was handwritten.

Kinman's *pro se* motions to vacate judgment and withdraw his guilty plea, to amend his sentence, and to transport.

# Discussion and Decision

## 1. Pre-Sentence Motion to Withdraw Guilty Plea

[10] We review a pre-sentence motion to withdraw a guilty plea under Indiana Code section 35-35-1-4(b) for an abuse of discretion. *Coomer v. State*, 652 N.E.2d 60, 61-2 (Ind. 1995). Indiana Code section 35-35-1-4(b) states:

> (b) After entry of a plea of guilty, or guilty but mentally ill at the time of the crime, but before imposition of sentence, the court may allow the defendant by motion to withdraw his plea of guilty, or guilty but mentally ill at the time of the crime, for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea. The motion to withdraw the plea of guilty or guilty but mentally ill at the time of the crime made under this subsection shall be in writing and verified. The motion shall state facts in support of the relief demanded, and the state may file counter-affidavits in opposition to the motion. The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion. However, the court shall allow the defendant to withdraw his plea of guilty, or guilty but mentally ill at the time of the crime, whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

Under Indiana Code section 35-35-1-4(e), a defendant "has the burden of establishing his grounds for relief by a preponderance of the evidence." Kinman argues the trial court abused its discretion when it denied his oral motion to withdraw his guilty plea prior to sentencing because withdrawal was

required to correct a manifest injustice, with that manifest injustice being the alleged improper sentence for Kinman's habitual offender adjudication.

[11] As an initial matter, we note Kinman neither filed his motion to withdraw his guilty plea in writing nor had it verified as required by Indiana Code section 35-35-1-4(b).[10] At the beginning of the sentencing hearing, Kinman's counsel indicated Kinman had told counsel "that he wishes to withdraw his former plea of guilty[.]" (Tr. Vol. III at 24.) Kinman further stated he "want[ed] to go to trial." (*Id.* at 26.) However, this request was never reduced to writing, and the trial court denied Kinman's motion to withdraw his guilty plea shortly after it was made.

[12] Further, Kinman has not demonstrated the withdrawal of his plea was necessary to correct a "manifest injustice." He argued before the trial court that his plea agreement was void because its language indicated the habitual offender enhancement was to be served consecutive to his other two sentences,

---

[10] Kinman argues that his November 7, 2019, *pro se* motion to vacate judgment and withdraw his guilty plea satisfied the requirement that a motion to withdraw a guilty plea be made in writing and verified. However, the November 7 motion was filed after sentencing, and it contains additional argument not made by Kinman during his oral motion to withdraw his guilty plea on October 18, 2019. Thus, the November 7 motion was a motion to withdraw a guilty plea subsequent to sentencing, which is governed by Indiana Code section 35-35-1-4(c). We will address the trial court's denial of Kinman's November 7 written motion in the second half of our analysis.

instead of as an enhancement of the Level 5 felony sentence, and that other inmates told him that this characterization was contrary to statute and illegal.[11]

[13] The habitual offender statute states, in relevant part:

> (j) Habitual offender is a status that results in an enhanced sentence. It is not a separate crime and does not result in a consecutive sentence. The court shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced. If the felony enhanced by the habitual offender determination is set aside or vacated, the court shall resentence the person and apply the habitual offender enhancement to the felony conviction with the next highest sentence in the underlying cause, if any.

In Kinman's plea agreement the State indicated his sentence for "Habitual Offender" was "Consecutive to" his sentence for Level 5 burglary. (App. Vol. II at 34) (emphasis in original omitted). At his sentencing hearing, Kinman argued that the language of Indiana Code section 35-50-2-8(j) - specifically, "Habitual offender is a status that results in an enhanced sentence. It is not a

---

[11] On appeal, Kinman argues he did not knowingly or voluntarily enter into his plea agreement and thus the trial court abused its discretion when it denied his oral motion to withdraw his guilty plea prior to sentencing. In his reply brief, Kinman attempts to characterize his argument at sentencing regarding the difference between consecutive and enhancement as equal to an argument that he did not knowingly or voluntarily enter into his plea agreement. We disagree. At no time during sentencing did Kinman say he did not understand the language of his plea agreement. Instead, he maintained the State's interpretation of Indiana Code section 35-50-2-8(j) was illegal, and that his plea was void on that basis. Thus, as it relates to Kinman's motion to withdraw his guilty plea prior to sentencing, he cannot argue for the first time on appeal that he did not knowingly or voluntarily enter into the plea agreement, and that particular argument as to this particular issue is waived. *See Goodner v. State*, 685 N.E.2d 1058, 1060 (Ind. 1997) (argument presented for first time on appeal is waived).

separate crime and does not result in a consecutive sentence" – means the State's language in the plea agreement is incorrect and thus his plea agreement was void.

[14] During the sentencing hearing, the State explained the possible source of confusion:

> However, may I please – however, um, enhanced and consecutive for all intense [sic] and purposes does the same thing and I have written it as consecutive in the past because I think it's clearer to say that it's a consecutive sentence because I think it's clearer in everybody's minds it doesn't run concurrent. That statute that he is um, referred to read and I've gotten I don't know maybe ten letters and motions from defendants at the jail who misunderstand this[.] J says "habitual offender is a status that results in an enhanced sentence. It is not a separate crime and does not result in a consecutive sentence. The Court shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced. If the felony enhanced by the habitual determination is set aside or vacated the Court shall re-sentence the person and apply the enhancement to the next highest felony conviction.". [sic] Um, it does not run concurrent. Mr. Kinman is reading that statute wrong um, and the only thing that really needs to happen to make this um, right is your sentencing order is in fact supposed to say that the habitual offender count attaches to the dealing in a narcotic drug a 5 felony and enhances that sentence by four years.

(Tr. Vol. II at 25.)

[15] We agree the State's language in the plea agreement is incorrect. The State should have used the language set forth in Indiana Code section 35-50-2-8(j) –

the highest felony sentence is to be *enhanced* by the habitual offender adjudication. Using the word "consecutive" unnecessarily confuses the matter, as the statute itself clearly states the habitual offender adjudication is not a separate crime that receives a consecutive sentence. Because of that language, we have long held that those adjudicated as habitual offenders must have one of the sentences for one of their convictions enhanced, and we have remanded cases for resentencing when a trial court has ordered a defendant to serve a habitual offender sentence consecutive to other convictions, listing the habitual offender adjudication as a separate crime. *See e.g., Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001) ("A habitual offender finding does not constitute a separate crime nor does it result in a separate sentence, rather it results in a sentence enhancement imposed upon the conviction of a subsequent felony."); *Pinkston v. State*, 436 N.E.2d 306, 307 (Ind. 1982) ("One convicted of a crime and found to be an habitual criminal is not sentenced separately for being an habitual criminal. . . . [The statute] provides for an enhancement of the penalty for the instant crime because the defendant is found to be an habitual criminal."); *Harris v. State*, 964 N.E.2d, 920, 927 (Ind. Ct. App. 2012) ("It is well settled that a habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. . . . Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony."), *trans. denied*. We advise the State to draft plea agreements that do not violate the language of the relevant statute.

Nevertheless, Kinman has not suffered a manifest injustice because of this improper wording. He argues the habitual offender enhancement must be served concurrent to his other sentences, but that is illogical under the plain language of Indiana Code section 35-50-2-8, which authorizes trial courts to sentence habitual offenders to "an additional fixed term that is . . . nonsuspendible." Ind. Code § 35-50-2-8(i). It is well settled that a habitual offender enhancement is meant "to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies. *Comstock v. State*, 273 Ind. 259, 264, 406 N.E.2d 1164, 1167 (1980).

Kinman's motion was not in writing and verified as required by Indiana Code section 35-35-1-4(b). Nor did Kinman demonstrate the withdrawal of his guilty plea was necessary to correct a manifest injustice. Therefore, we conclude the trial court did not abuse its discretion when it denied Kinman's pre-sentence motion to withdraw his guilty plea. *See Bland v. State*, 708 N.E.2d 880, 882 (Ind. Ct. App. 1999) (denial of pre-sentence motion to withdraw guilty plea affirmed because Bland did not file a written and verified motion and had not established by a preponderance of the evidence that denial of his motion to withdraw his guilty plea would result in manifest injustice).

## 2. Post-Sentence Motion to Withdraw Guilty Plea

Indiana Code section 35-35-1-4(c) governs a motion to withdraw a guilty plea made after sentencing and states:

(c) After being sentenced following a plea of guilty, or guilty but mentally ill at the time of the crime, the convicted person may not as a matter of right withdraw the plea. However, upon motion of the convicted person, the court shall vacate the judgment and allow the withdrawal whenever the convicted person proves that withdrawal is necessary to correct a manifest injustice. A motion to vacate judgment and withdraw the plea made under this subsection shall be treated by the court as a petition for postconviction relief under the Indiana Rules of Procedure for Postconviction Remedies. For purposes of this section, withdrawal of the plea is necessary to correct a manifest injustice whenever:

> (1) the convicted person was denied the effective assistance of counsel;
>
> (2) the plea was not entered or ratified by the convicted person;
>
> (3) the plea was not knowingly and voluntarily made;
>
> (4) the prosecuting attorney failed to abide by the terms of a plea agreement; or
>
> (5) the plea and judgment of conviction are void or voidable for any other reason.

Under Indiana Code section 35-35-1-4(e), the moving party, here Kinman, has the burden of establishing grounds for relief by a preponderance of the evidence.

[19]     Kinman's post-sentence motion to vacate judgment and motion to withdraw guilty plea are governed by Post-Conviction Rules as stated in Indiana Code section 35-35-1-4(c), and Post-Conviction Rule 1(5) also requires the petitioner, here Kinman, to prove his grounds for relief by a preponderance of the evidence. "In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Humphrey v. State*, 73 N.E.3d 677, 681 (Ind. 2017). In conducting our review we do not defer to the court's legal conclusions and we will reverse the trial court's judgment only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.*

[20]     Kinman argues that a "manifest injustice arose from the State's erroneous designation of the habitual offender enhancement as a separate conviction in the plea agreement and [from] Kinman's obvious misunderstanding of the impact of the habitual offender finding on his sentence[,]" (Appellant's Br. at 18), and thus we should reverse the trial court's denial of his motion to vacate judgment and withdraw his guilty plea. However, in his post-sentence motion to vacate judgment and withdraw his guilty plea, Kinman did not argue that he did not understand the impact of the habitual offender finding on his sentence. Instead, he argued he was incompetent at the time he entered the plea because

he asked for a mental health evaluation and he was not given one,[12] his trial counsel was ineffective, and his sentence was "illegal, unlawful[], and excessive" based on his interpretation of Indiana Code section 35-50-2-8(j). (App. Vol. II at 97.) As Kinman makes an argument on appeal that was not first presented before the trial court, that argument is waived. *See Phillips v. State*, 22 N.E.3d 749, 762 (Ind. Ct. App. 2014) (appellant cannot argue one legal theory before the trial court and present a different theory on appeal), *trans. denied*.

[21] Waiver notwithstanding, Kinman has not demonstrated he misunderstood the impact a habitual offender adjudication would have on his sentence. His plea agreement stated the habitual offender enhancement would add four years to his sentence under Cause 131. During his guilty plea hearing, the judge read Kinman's guilty plea to him and reiterated the charges for which he was pleading guilty by stating, "Do you understand the crime for which you're pleading guilty to today is dealing in a narcotic drug as a Level 5 felony, a habitual offender enhancement on that and also residential entry as a Level 6 felony?" (Tr. Vol. II at 15.) Kinman told the trial court multiple times that he understood the terms of his plea, that he was satisfied with his counsel's representation, and that it was his intent to plead guilty as indicated in the terms of the plea agreement. Based thereon, we cannot say Kinman did not

---

[12] Despite Kinman's contention, the discussion regarding Kinman's request for a mental evaluation was understood at the time it occurred to be a request for evaluation and treatment as part of his sentence. (*See* Tr. Vol. II at 16-19) (discussion of Kinman's request for a mental health evaluation).

knowingly enter into his plea agreement. Nor has Kinman demonstrated manifest injustice would result if he was not allowed to withdraw his guilty plea. Therefore, the trial court did not err when it denied his post-sentence motion to vacate judgment and withdraw his guilty plea. *See Barnes v. State*, 738 N.e.2d 1093 (Ind. Ct. App. 2000) (no manifest injustice when defendant was represented by counsel at plea hearing and indicated he understood his plea, which he also signed), *reh'g denied*, *trans. denied*.

## Conclusion

[22] We conclude the trial court did not abuse its discretion when it denied Kinman's pre-sentence oral motion to withdraw his guilty plea and did not err when it denied Kinman's post-sentence written motion to vacate judgment and withdraw his guilty plea. Accordingly, we affirm.

[23] Affirmed.

Robb, J., and Vaidik, J., concur.