

FILED

Jun 09 2015, 6:24 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gregory A. Rose, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 9, 2015 <br><br> Court of Appeals Case No. <br> 20A03-1409-CR-343 <br><br> Appeal from the Elkhart Superior <br> Court 3 <br><br> The Honorable George W. <br> Biddlecome, Judge <br><br> Trial Court Cause No. <br> 20D03-1206-FA-35 |

**Mathias, Judge.**

[1] Gregory A. Rose was convicted in Elkhart Superior Court 3 of Class A felony child molesting and Class C felony child molesting. Rose then admitted to being a repeat sexual offender, and the trial court sentenced him to an aggregate term of fifty-five years incarceration. Rose appeals and presents three issues for our review, which we restate as:

I. Whether fundamental error occurred when an attorney who was a candidate for the office of judge of the Elkhart Superior Court 3 was selected as a juror and served as the jury foreman;

II. Whether the State presented evidence sufficient to support Rose's convictions; and

III. Whether Rose's fifty-five year aggregate sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm Rose's convictions and sentence but remand with instructions that the trial court attach Rose's repeat sexual offender enhancement to the sentence imposed on the Class A felony conviction.

## Facts and Procedural History

In late 2009, Rose moved in with his sister, Brenda, who lived in Bristol, Indiana. Shortly before this, Brenda's son and his daughter, B.S., had moved out of Brenda's home. B.S., who was born in 2000, would frequently visit her grandmother Brenda's home, as Brenda provided childcare for B.S. while Brenda's son worked. Brenda's other grandchildren were also often at the home, and Rose was close with all of the children. He had a particularly close relationship with B.S., and the two would play games on Rose's computer and watch television together in the basement where Rose lived.

One night in the summer of 2010, when B.S. was ten years old, she and her cousins slept at their grandmother's home in the basement. After the other children had fallen asleep, Rose entered the room and told B.S. that he wanted her to come and see something. B.S. followed Rose into his bedroom, where he closed the door. Rose then pushed B.S. to the ground and pulled down her

pants. He held her shoulders to the ground and placed his penis into her "private part" "just enough to hurt." Tr. pp. 460-61. Rose eventually let Rose get up and go back into the other room but warned her that if she told anyone what had happened that he would "do it again." *Id*. at 462. Frightened, B.S. did not report what had happened at that time.

[5] Later that year, during the winter months, Rose and B.S. were playing a game on Rose's computer. As B.S. was sitting in Rose's lap, he began to rub her back. He then moved his hand toward the girl's side, under her shirt, and moved his hand higher until he touched her breast. Startled, B.S. jumped, and Rose told her, "I'm sorry." Tr. p. 465. B.S. did not initially report this incident.

[6] At a later date, Brenda had a discussion with B.S. about whether she knew about inappropriate touching. B.S. began to cry and eventually told her grandmother about Rose touching her. Brenda decided that they would discuss the allegations with B.S.'s father. Brenda also had her husband tell Rose to move out of the home. However, the allegations were not reported to the police at that time.

[7] Some time later, on January 31, 2012, B.S. was in sixth grade when she wrote a note to a friend informing him that she had been abused and "raped." Ex. Vol., Defendant's Ex. A. This friend's parent informed the school, and a school counselor met with B.S. to ask about the note. When she did, B.S. began to cry and stated that she had been raped when she was ten years old. B.S. was unable to speak but informed the counsellor by writing a note that someone had pulled

her pants down and "stuck his penis in my private part." Tr. p. 337. The counsellor called the police to report B.S.'s allegations. Later that day, B.S. was interviewed by a forensic interviewer for the Child and Family Advocacy Center. During the interview, B.S. told the interviewer of Rose's sexual abuse.

[8] On June 27, 2012, the State charged Rose with Class A felony child molesting, Class C felony child molesting, and further alleged that Rose was a repeat sexual offender based on his 1982 conviction for Class B felony unlawful deviate conduct.[1]

[9] A two-day jury trial was held on August 11 – 12, 2014. One of the prospective jurors in the venire was attorney Teresa Cataldo ("Cataldo"). Cataldo had worked as a defense attorney, a deputy prosecuting attorney, and served as judge *pro tempore*. She was also the sole candidate on the November ballot for judge of Elkhart Superior Court 3, where the trial was taking place.[2] Cataldo stated that she had interacted with the attorneys on both sides of the present case. She also stated, however, that neither her prior experience with these attorneys nor her experience with the legal system would interfere with her ability to be a fair and impartial juror. Cataldo acknowledged that the other jurors might look to her for guidance, but she knew that she was there as a "normal juror." Tr. pp. 184-85. Neither party objected to Cataldo as a juror, nor

---

[1] *See* Ind. Code § 35-42-4-2 (1977).

[2] Cataldo is now Judge of Elkhart Superior Court 3. *See* http://www.in.gov/judiciary/3386.htm.

did either party use a peremptory strike to remove her as a juror. Cataldo was then selected as one of the jurors.

[10] On the second day of trial, the trial court was informed that Cataldo had represented B.S.'s mother in a juvenile paternity case from August 2007 to January 2008. When questioned about this by the trial court, Cataldo stated that she did not remember that case and that her involvement in that case would not affect or interfere with her ability to remain fair and impartial as a juror. Again, neither party objected to Cataldo serving as a juror. In fact, Rose's trial counsel specifically stated:

> Your Honor, I have no objection to Ms. Cataldo remaining on the jury. I take her at her word [that] she had no recollection of this person she represented for a short time. The individual [is] not going to be testifying, so we have no objection – I've talked to my client – we have no objection to her remaining as a juror.

Tr. p. 320. The trial court then directly asked Rose, "Do you agree with that, Mr. Rose?" To this, Rose replied, "Yes, sir, I do." *Id.*

[11] At the conclusion of the trial, the jury, with Cataldo acting as foreman, found Rose guilty as charged. Rose then admitted to being a repeat sexual offender based on his prior conviction for unlawful deviate conduct.

[12] At the sentencing hearing held on September 4, 2014, the trial court found as aggravating circumstances that Rose had violated a position of trust; that Rose threatened the victim to remain silent; that Rose had two prior felony convictions, including one for criminal deviate conduct, and three prior

misdemeanor convictions; and that Rose had previously violated the terms of his probation three times. The trial court acknowledged as mitigating that Rose had admitted to being a repeat sexual offender. The court considered Rose's claim that no physical violence occurred in the present case, but rejected this, noting: "the court finds that argument to be tenuous in light of the fact that the defendant is a grown man who forced himself on the victim, who was an 11-year-old child. The court considers that to be a violent act." Appellant's App. p. 102. The trial court also rejected Rose's proffered mitigator that he was addicted to alcohol and illicit drugs, noting that Rose "has been given two opportunities in the past to address those addictions through treatment, and he either failed or refused to responsibly do so." *Id*.

[13] The trial court sentenced Rose to forty-five years on the Class A felony child molesting conviction, a concurrent term of seven years on the Class C felony child molesting conviction, and enhanced the forty-five-year sentence by ten years as a result of the repeat sexual offender determination. The court also found that Rose was a credit-restricted felon. Thus, Rose received an aggregate sentence of fifty-five years. Rose now appeals.

## I. No Fundamental Error in Judicial Candidate Serving on Jury

[14] Rose first contends that it was improper for Cataldo to serve on the jury, given her status as an attorney who was the sole candidate for the office of judge of the court in which the trial was taking place. Rose admits that he made no objection at trial to Cataldo serving as a juror. Thus, he failed to properly preserve this issue for appeal. See *Jewell v. State*, 887 N.E.2d 939, 940 n.1 (Ind.

2008) (noting general rule that failure to object at trial constitutes procedural default precluding consideration of an issue on appeal) (citing *Benson v. State,* 762 N.E.2d 748, 755 (Ind. 2002)).

[15] Rose seeks to avoid this procedural default by claiming that Cataldo serving on the jury amounted to fundamental error.[3] "The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of an issue on appeal." *Id.* Our supreme court recently summarized the law regarding fundamental error as follows:

> Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible. In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm. The element of such harm is not established by the fact of ultimate conviction but rather depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled. In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given

---

[3] The State argues that Rose invited any error and that the fundamental error exception is therefore inapplicable. *See Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) (holding that the fundamental error exception gives appellate courts leeway to mitigate the consequences of counsel's oversight but that invited error precludes relief from counsel's strategic decisions gone awry), *reh'g denied*. Because we reject Rose's claim of fundamental error, we need not decide whether the error at issue was invited.

to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible.

We stress that [a] finding of fundamental error essentially means that the trial judge erred . . . by not acting when he or she should have. . . . Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error.

*Ryan v. State*, 9 N.E.3d 663, (Ind. 2014), reh'g denied (citations, internal quotations, and footnote omitted) (alterations and emphasis in original).

[16] Rose argues that a possibility exists that he "received a trial in front of a jury of one, or the functional equivalent to a bench trial" because Cataldo sat as a juror. Appellant's Br. at 8. First, by use of the word "possibility," Rose effectively concedes that his argument in this regard is mere speculation. *See May v. State*, 578 N.E.2d 716, 725 (Ind. Ct. App. 1991) (noting that a sheerly speculative argument provides no basis for reversal). More importantly, at the time she sat on the jury, Cataldo had not been elected as judge; she was simply another citizen performing her civic duty to serve on a jury. We therefore reject Rose's claim that he effectively received a bench trial.

[17] To the extent that Cataldo was an attorney, she testified during voir dire that, despite her familiarity with the attorneys in the case, she would be able to act fair and impartially as a juror. Rose does not refer us to, and we are not aware of, any rule, statute, or authority that would disqualify an attorney or a judge to

serve as a juror. *Cf.* Ind. Code § 33-28-5-18 (listing disqualifications for jury service).

[18]  Rose also argues that Cataldo should not have served on the jury because she had previously represented B.S.'s mother in an unrelated matter. This, however, occurred five years before the current trial, and Cataldo testified that she had no recollection of that case and that it would not affect her ability to act as an impartial juror. The trial judge, and indeed Rose's trial counsel, credited Cataldo's statements, and we cannot say that this decision, which resulted in Cataldo serving on the jury, had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible.

## II.  Sufficient Evidence to Support Verdicts

[19]  Rose next claims that the State failed to present evidence sufficient to support his convictions. We address each conviction in turn.

### A.  Standard of Review

[20]  Our standard of review for claims of insufficient evidence is well settled: we neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence favorable to the verdict and all reasonable inferences that can be drawn therefrom. *Newman v. State,* 677 N.E.2d 590, 593 (Ind. Ct. App. 1997). We will affirm the convictions if substantial evidence of probative value exists from which a trier of fact could find guilt beyond a reasonable doubt. Moreover, a conviction for child molesting may rest solely upon the

uncorroborated testimony of the victim. *Turner v. State,* 720 N.E.2d 440, 447 (Ind. Ct. App. 1999).

### B.  Class A Felony Child Molesting

[21]  To convict Rose of Class A felony child molesting as charged, the State was required to prove beyond a reasonable doubt that he: "knowingly perform or submit to deviate sexual conduct or sexual intercourse with B.S., a child under fourteen (14) years of age." Appellant's App. p. 14; *see also* Ind. Code § 35-42-4-3(a)(1) (2004).[4] Sexual intercourse is defined by statute as "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35-41-1-26 (2004).

[22]  Here, the State presented the testimony of B.S., who testified that Rose placed his penis inside of her and in her "private part." Tr. p. 460. This testimony, if credited, was sufficient to support Rose's conviction for Class A felony child molesting. *See Turner v. State,* 720 N.E.2d at 447; *see also Stewart v. State*, 768 N.E.2d 433, 437 (Ind. 2002) ("we agree with the observation that the term 'private part' 'is generally understood as a commonplace designation of genital procreative organs.'") (quoting *Washington v. Dennison,* 435 P.2d 526, 529 (1967)).

[23]  Rose nevertheless insists that we should discredit B.S.'s testimony because it was uncorroborated and inconsistent with her prior deposition. This is simply a

---

[4]  We refer to the version of the states in effect at the time Rose committed his crimes.

request that we judge B.S.'s credibility and weigh her testimony differently than did the jury, which we may not do. *See Newman,* 677 N.E.2d at 593.

[24] To the extent that Rose argues that we should discredit B.S.'s testimony under the "incredible dubiosity" rule, we disagree. The incredible dubiosity rule applies only in very narrow circumstances. *See Love v. State,* 761 N.E.2d 806, 810 (Ind. 2002). The rule has been expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Id.* Those cases where we have found testimony inherently improbable or of incredible dubiosity have involved either situations where the facts as alleged "could not have happened as described by the victim and be consistent with the laws of nature or human experience," *Watkins v. State,* 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991), *aff'd in part and vacated in part,* 575 N.E.2d 624 (Ind. 1991), or the witness was so equivocal about the act charged that his uncorroborated and coerced testimony "was riddled with doubt about its trustworthiness." *Id.* The case before us does not fall within either category.

[25] Nothing in B.S.'s testimony was inconsistent with the laws of nature or human experience. Indeed, our case law is replete with horrid examples of children being sexually abused by adults. Although B.S.'s testimony has some

inconsistencies, this was for the jury to consider. *See Murray v. State,* 761 N.E.2d 406, 409 (Ind. 2002) ("The fact that a witness gives trial testimony that contradicts earlier pre-trial statements does not necessarily render the trial testimony incredibly dubious."); *Beckham v. State*, 531 N.E.2d 475, 476 (Ind. 1988) (question of whether child victim's testimony, which was inconsistent at times, was to be believed was for the jury to determine); *Hill v. State*, 646 N.E.2d 374, 378 (Ind. Ct. App. 1995) (noting that we have long recognized that a young child in an adversarial courtroom setting may demonstrate a degree of confusion and inconsistency). Moreover, no indication exists that B.S.'s testimony was in any way coerced, nor was it equivocal. Under these facts and circumstances, Rose cannot avail himself of the incredible dubiosity rule.

## C. Class C Felony Child Molesting

[26] To convict Rose of Class C felony child molesting as charged, the State had to prove beyond a reasonable doubt that Rose: "with B.S., a child under the age of fourteen (14) years of age, did knowingly perform or submit to any fondling or touching of either the child or the older person, with intent to arouse or gratify the sexual desires of either the child or the older person." Appellant's App. p. 14; *see also* Ind. Code § 35-42-4-3(b) (2004).

[27] Here, the State again relied on the testimony of B.S., who testified that while she was sitting on Rose's lap, he rubbed her back and side, then slid his hand up underneath her shirt and touched her breast. This startled B.S., and Rose told her, "I'm sorry." Tr. p. 465. Rose acknowledges this evidence but claims it is

insufficient to establish that he had an intent to arouse or gratify either his or B.S.'s sexual desires as required by statute. We disagree.

[28] The element of intent of child molesting may be established by circumstantial evidence and inferred from the defendant's conduct and the natural and usual sequence to which such conduct usually points. *Cruz Angeles v. State*, 751 N.E.2d 790, 797 (Ind. Ct. App. 2001), *trans. denied*. The jury could reasonably infer Rose's intent to arouse or gratify his or B.S.'s sexual desires by his act of touching the young girl's breast underneath her shirt. *See Altes v. State*, 822 N.E.2d 1116, 1122 (Ind. Ct. App. 2005) (sufficient evidence to support inference of intent to arouse or gratify sexual desire where defendant rubbed her upper body, first over her clothes, then under her shirt, touching her bare skin from her shoulders to the waist), *trans. denied*; *Cruz Angeles*, 751 N.E.2d at 798 (sufficient evidence to support inference of intent to arouse or gratify sexual desire where defendant touched victims' breasts over their clothing); *Pedrick v. State,* 593 N.E.2d 1213, 1220 (Ind. Ct. App. 1992) (sufficient evidence to establish intent to arouse or gratify sexual desire where defendant put his arm around child's shoulder let his hand hang and touch her breast and where he placed his hand on the shoulder of another child and then on her breast).

[29] Based on well-established law and the evidence in this case, the State presented sufficient evidence to establish that Rose had sexual intercourse with B.S. and touched her breast with the intent to arouse or gratify his or her sexual desires.

## III. Rose's Sentence is Not Inappropriate

[30]    Rose lastly claims that his aggregate sentence of fifty-five years is inappropriate. Even if a trial court acted within its statutory discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Trainor v. State*, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), *trans. denied* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007)). This authority is implemented through Indiana Appellate Rule 7(B), which provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[31]    Still, we must and should exercise deference to a trial court's sentencing decision, because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id*. Although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to level the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied* (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)).

[32]     Our review under Appellate Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*. The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Former v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Id*. (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

[33]     Here, Rose was convicted of a Class A felony, a Class C felony, and was found to be a repeat sexual offender. The sentencing range for a Class A felony is twenty to fifty years, with thirty years being the advisory sentence. *See* Ind. Code § 35-5-2-4 (2005). The sentencing range for a Class C felony is two to eight years, with four years being the advisory sentence. *See* Ind. Code § 35-50-2-6 (2005). In addition, a trial court "may sentence a person found to be a repeat sexual offender to an additional fixed term that is the advisory sentence for the underlying offense. However, the additional sentence may not exceed ten (10) years." Ind. Code § 35-50-2-14(f) (2009). Thus, Rose faced a possible sentence of between twenty-six to sixty-eight years. The trial court fashioned a sentence of fifty-five years.

[34]     We also note that Rose is a credit-restricted felon who can earn only one day of credit time for every six days of time served. *See* Ind. Code § 35-41-1-5.5(1) (2008) (defining "credit restricted felon" to include those convicted of child molesting involving sexual intercourse where the defendant is over the age of

twenty-one and the victim is under the age of twelve); Ind. Code § 35-50-6-4 (2008) (providing that a credit restricted felon is initially assigned to Class IV for purposes of credit time); Ind. Code § 35-50-6-3 (2008) (providing that a person assigned to Class IV earns one day of credit for every six days the person in is imprisoned for a crime or confined awaiting trial or sentencing). Our supreme court has held that "evaluation of a defendant's sentence [under Appellate Rule 7(B)] may include consideration of the defendant's credit time status because this penal consequence was within the contemplation of the trial court when it was determining the defendant's sentence." *Sharp v. State*, 970 N.E.2d 647, 651 (Ind. 2012). With all of this in mind, we address the appropriateness of Rose's sentence.

[35]     We first consider the nature of the offenses for which Rose was convicted. Rose was the great-uncle of the victim and often spent time with her in the house of her grandmother and his sister, where B.S. stayed when her father was at work. Abusing this position of trust, Rose fondled B.S. and also forcibly held the ten-year-old girl down by her shoulders and placed his penis in her vagina, causing her physical pain. He then threatened to do the same to her if she told anyone about the molestation.

[36]     Turning to the character of the offender, we note that Rose has a relatively extensive criminal history, nor is this Rose's first conviction for sexual misconduct. As noted, Rose was convicted in 1982 for Class B felony unlawful deviate conduct and received a twenty-year sentence. Upon his release from prison in 1993, he committed another felony, Class D felony possession of

cocaine or narcotic drug, in 2004. For this offense, he received a thirty-month sentence, suspended to probation. After his first probation violation, the trial court opted to continue probation in the "Justice Alternatives" program. Appellant's App. p. 132. However, Rose again violated the terms of his probation, and the trial court sentenced him to home detention. Rose then violated the terms of his probation yet again, and the trial court vacated his probation and sentenced him to the Department of Correction. Rose's criminal history also includes misdemeanor convictions for criminal recklessness, check deception, and operating while intoxicated. Although his Class B felony conviction was in 1982, his subsequent convictions occurred in 2004, 2006, and 2011. Rose also admitted to having used marijuana, methamphetamine, cocaine, and LSD. Appellant's App. p. 147. Clearly, Rose's past experiences with the criminal justice system have not deterred his criminal behavior.

[37] Under these facts and circumstances, we cannot say that Rose has met his burden of demonstrating that his aggregate sentence of fifty-five years is inappropriate. *See Sharp*, 970 N.E.2d at 651 (concluding that defendant's sentence of forty years was not inappropriate despite his status as a credit-restricted felon where he was convicted of two counts of molesting his step-son, one by deviate sexual conduct and the other by fondling).

[38] We note, *sua sponte*, however, that the trial court ordered Rose's ten-year repeat sexual offender enhancement to be served as a separate sentence, consecutive to the sentence on the Class A felony conviction. This is improper. A habitual

offender finding[5] does not constitute a separate crime, nor does it result in a separate sentence; instead, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Harris v. State*, 964 N.E.2d 920, 927 (Ind. Ct. App. 2012), *trans. denied*. We therefore remand with instructions that the trial court vacate the separate sentence on the repeat sexual offender enhancement and attach the ten-year enhancement to Rose's sentence for Class A felony child molesting. *See id.*

## Conclusion

[39] Rose was not denied fundamental due process when an attorney who was running for the office of judge of the court in which he was tried was seated as a juror. The testimony of the victim, which was not incredibly dubious, is sufficient to support Rose's convictions for child molesting. Rose's aggregate sentence of fifty-five years is not inappropriate in light of the nature of the offense and the character of the offender. However, we remand with instructions that the trial court attach the repeat sexual offender enhancement to the sentence imposed on the Class A felony conviction.

[40] Affirmed and remanded with instructions.

May, J., and Robb, J., concur.

---

[5] A repeat sexual offender finding is a habitual offender finding. *See Beldon v. State*, 926 N.E.2d 480, 482 (Ind. 2010) (noting that repeat sexual offender status is a "specialized habitual offender status").