## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 12 2018, 8:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Emilee L. Stotts
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shawn M. Burnworth, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 12, 2018 <br><br> Court of Appeals Case No. 35A05-1709-CR-2207 <br><br> Appeal from the Huntington Superior Court <br><br> The Honorable Jennifer E. Newton, Judge <br><br> Trial Court Cause Nos. 35D01-1612-F5-259 35D01-0906-FA-122 |

**Mathias, Judge.**

[1] In 2009, Shawn M. Burnworth ("Burnworth") pleaded guilty in Huntington Superior Court to Class B felony dealing in methamphetamine. The court

sentenced Burnworth to twenty years, with fourteen years executed and six years suspended to probation. Burnworth was released from prison in 2014 and began his probation. In 2016, while still on probation for the first conviction, Burnworth pleaded guilty to Level 5 felony dealing in methamphetamine and admitted to being an habitual offender and to violating the terms of his probation. After this second plea, the trial court sentenced Burnworth to an aggregate of twelve years of incarceration. The court also revoked Burnworth's probation and ordered him to serve the six-year balance of his previously suspended sentence. Burnworth appeals and presents three issues, which we restate as:

I.   Whether the trial court erred by imposing a separate, consecutive sentence on Burnworth's habitual offender adjudication;
II.  Whether Burnworth's twelve-year sentence is inappropriate; and
III. Whether the trial court abused its discretion by ordering Burnworth to serve the balance of his previously suspended sentence.

The State concedes, and we agree, that the trial court erred by imposing the habitual offender enhancement as a separate consecutive sentence instead of attaching it to Burnworth's underlying conviction. However, we reject Burnworth's other arguments. We therefore affirm Burnworth's sentences but remand with instructions that the trial court attach the habitual offender enhancement to the sentence imposed on the Level 5 felony conviction.

## Facts and Procedural History

On June 8, 2009, Burnworth drove his car in Huntington, Indiana while he manufactured methamphetamine in the car. At some point, the portable

methamphetamine lab he was using to manufacture the drug exploded, and the car burst into flames. Burnworth jumped from the still-moving car, which hit a telephone pole.

[3] As a result of this incident, the State charged Burnworth on June 10, 2009, with Class A felony dealing in methamphetamine and Class A misdemeanor purchasing three or more grams of ephedrine or pseudoephedrine within seven days. On August 4, 2009, Burnworth entered into a plea agreement with the State, pursuant to which he agreed to plead guilty to Class B felony dealing in methamphetamine and receive a twenty-year sentence. The agreement gave the trial court discretion to suspend a portion of the sentence. The trial court accepted the plea and sentenced Burnworth to fourteen years executed and six years suspended to probation. Burnworth was released from prison on December 17, 2014, and began his probation.

[4] In the fall of 2016, the State filed a petition to revoke Burnworth's probation alleging that he had failed to report to scheduled appointments with his probation officer, failed to report to scheduled drug tests, and failed to provide his address to his probation office. At the hearing held on this petition, Burnworth admitted to violating the terms of his probation. He also tested positive for marijuana use. The trial court declined to revoke Burnworth's probation and decided instead to continue probation with modified conditions, which included participation in an intensive outpatient treatment program. Burnworth quickly squandered this second chance.

[5]     On September 14, 2016, Burnworth rode in a car in Huntington County with several friends as he manufactured methamphetamine inside a twenty-ounce bottle. As the car drove past a local high school, Burnworth noticed that a police patrol car was driving behind them. Burnworth made the questionable decision to throw the bottle out of the car in view of the police officer, who immediately pulled the vehicle over. Inside the car, the police found other items used in the manufacture and use of methamphetamine, including one empty and one unopened box of pseudoephedrine pills, tools, scales, and hypodermic needles. Burnworth admitted that he intended to sell the methamphetamine to raise money so that he could leave town and had already made plans to sell the methamphetamine.

[6]     As a result of this incident, the State charged Burnworth on December 21, 2016, with Level 5 felony dealing in methamphetamine. The State subsequently added an allegation that Burnworth was an habitual offender. On August 15, 2017, Burnworth entered into an "open" plea agreement and pleaded guilty without any limitations or agreement as to his sentence. At the September 12, 2018 sentencing hearing, the trial court imposed a six-year sentence on the Level 5 felony conviction and a consecutive six-year sentence on the habitual offender adjudication. The trial court also revoked Burnworth's probation and ordered him to serve the six-year balance of his previously suspended sentence. Burnworth now appeals.

# I. Habitual Offender Enhancement

[7] Burnworth first claims that the trial court erred by entering the sentence enhancement for his habitual offender adjudication as a separate, consecutive sentence. The State concedes the error, and we agree. An habitual offender adjudication does not constitute a separate crime, nor does it result in a separate sentence. *Rose v. State*, 36 N.E.3d 1055, 1064–65 (Ind. Ct. App. 2015) (citing *Harris v. State*, 964 N.E.2d 920, 927 (Ind. Ct. App. 2012), *trans. denied*). Instead, an habitual offender adjudication results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Id*. at 1065. Accordingly, we remand with instructions that the trial court vacate the separate sentence on the habitual offender enhancement and attach the six-year enhancement to Burnworth's conviction for Level 5 dealing in methamphetamine. *See id*.

# II. Appropriateness of Sentence

[8] Burnworth next argues that the twelve-year sentence imposed by the trial court is inappropriate. Even if a trial court acted within its statutory discretion in imposing a sentence, Sections 4 and 6 of Article 7 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Rose*, 36 N.E.3d at 1063. This constitutional authority is implemented through Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[9]     Still, we must exercise deference to a trial court's sentencing decision, because Rule 7(B) requires us to give "due consideration" to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id*. Although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to "leaven the outliers," and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[10]    Our review under Appellate Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*. The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Rose*, 36 N.E.3d at 1063. It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

[11]    Here, Burnworth was convicted of a Level 5 felony and found to be an habitual offender. The sentencing range for a Level 5 felony is one to six years. Ind. Code § 35-50-2-6(b). And the trial court had the discretion to impose an habitual offender enhancement of two to six years. Ind. Code § 35-50-2-8(i)(2). Thus, the trial court imposed the maximum sentence of twelve years.

[12] "Although the maximum possible sentences are generally most appropriate for the worst offenders, this rule is not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario, regardless of the nature of any particular offense and offender." *Kovats v. State*, 982 N.E.2d 409, 416 (Ind. Ct. App. 2013). By stating that maximum sentences are ordinarily appropriate for the "worst offenders," we refer generally to the class of offenses and offenders that warrant the maximum punishment, which encompasses a considerable variety of offenses and offenders. *Id*. Accordingly, "[w]e concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Wells v. State*, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009), *trans. denied* (citing *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*).

[13] In the present case, the nature of Burnworth's offense does little to persuade us that his sentence is inappropriate. For at least the second time, Burnworth was operating a mobile methamphetamine lab in a car. Burnworth knew well that doing so was dangerous, as his previous effort to do so resulted in his car catching fire. And this time, there were others in the car with him. Moreover, Burnworth threw the bottle in which he was making methamphetamine out of the car window, near a high school football field, thereby exposing even more people to the dangerous chemicals used in the making of methamphetamine. Burnworth further admitted that he already had buyers for the illicit drugs he

was making and that he planned to sell the methamphetamine to raise funds to leave town, despite the fact that he was on probation.

[14] Burnworth's character further supports the trial court's sentencing decision. Although Burnworth notes that he cooperated with the police and pleaded guilty, this only marginally improves our view of his character. As a juvenile, Burnworth was found to be delinquent for burglary and illegal possession of alcohol, in addition to status offenses such as truancy and running away from home. As an adult, Burnworth was twice convicted of Class D felony theft. And, as noted above, he was also convicted for Class B felony dealing in methamphetamine and was still on probation for this offense when he committed the instant offense. He has also accumulated convictions for twelve misdemeanors, including possession of marijuana, intimidation, battery, criminal mischief, public intoxication, operating while intoxicated, failure to stop at the scene of an accident, conversion, check deception, illegal possession of alcohol, and the purchase of more than three grams of ephedrine or pseudoephedrine.

[15] In addition, not only was Burnworth on probation at the time he committed the instant offense, he was on probation for committing the exact same act— manufacturing methamphetamine while in an automobile. And when Burnworth first violated the terms of his probation, the trial court chose not to revoke his probation and instead gave him a second chance on probation. Burnworth then committed the same crime for which he was on probation, i.e., manufacturing methamphetamine.

[16] Despite Burnworth's argument that his criminal behavior was motivated by his substance abuse problem—which we do not doubt—he squandered the opportunity for treatment that was offered to him while on probation. Specifically, when the trial court chose to continue Burnworth's probation and ordered him to participate in intensive outpatient substance abuse treatment, Burnworth chose not to participate in treatment. Instead, he fled the State.

[17] All of these facts and circumstances lead us to the conclusion that the twelve-year sentence imposed by the trial court is not inappropriate.[1]

### III. Probation Sentence

[18] Lastly, Burnworth argues that the trial court abused its discretion when it ordered him to serve the six-year balance of his previously suspended sentence. Burnworth does not deny that he violated the terms of his probation; to the contrary, he admitted to having done so. He claims only that, after he was charged with the instant offense, he found gainful employment in North Dakota and stopped using illicit drugs and that the trial court should therefore have not ordered him to serve the entire balance of his previously suspended sentence.

---

[1] We find Burnworth's citation to *Parks v. State*, 22 N.E.3d 552 (Ind. 2014), unavailing. In that case, the defendant was convicted of Class A felony dealing in methamphetamine and was sentenced under the prior sentencing scheme to forty years of incarceration. On appeal, our supreme court revised his sentence to thirty years, with twenty years executed at the Department of Correction, two years executed on Community Corrections, and eight years suspended to probation. *Id*. at 556. Thus, even the revised sentence in *Parks* was considerably greater than Burnworth's sentence. Although this is due in part to the 2015 revision of the criminal code, the fact remains that Parks's sentence was much greater than Burnworth's. Moreover, Burnworth, unlike the defendant in *Parks*, was on probation for the exact same behavior when he committed the instant offense. We therefore do not find *Parks* to be controlling.

Upon a finding of a probation violation, a trial court may impose one or more of the following sanctions:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>
> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(h).

A defendant is not entitled to serve a sentence in a probation program; rather, such placement is a matter of grace and a conditional liberty that is a favor, not a right. *Abernathy v. State*, 852 N.E.2d 1016, 1020 (Ind. Ct. App. 2006). We review the trial court's sentencing decisions on probation violations for an abuse of discretion. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The trial court should be given considerable leeway in deciding how to proceed following the revocation of probation. *Id.* Consequently, so long as proper procedures have been followed, the trial court may order execution of a suspended sentence after revoking probation. *Goonen v. State*, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999); *see also* I.C. § 35-38-2-3(h).

Here, Burnworth had previously violated the terms of his probation. The trial court could have revoked his probation and ordered him to serve the balance of

his previously suspended sentence at that time. Instead, the trial court gave Burnworth a second chance and extended his probation with the additional condition of outpatient substance abuse treatment. Instead of taking advantage of this opportunity, Burnworth failed to undergo treatment and committed the very same act that resulted in him being placed on probation in the first place—making methamphetamine. And after his arrest for this second incident, Burnworth fled the state. The trial court was therefore well within its discretion to order Burnworth to serve the six-year balance of his previously suspended sentence.

## Conclusion

[22] Burnworth's aggregate twelve-year sentence is not inappropriate in light of the nature of the offense and the character of the offender. Nor did the trial court abuse its discretion in ordering Burnworth to serve the six-year balance of his previously suspended sentence. The trial court did, however, err by entering the habitual offender enhancement as a separate, consecutive sentenced instead of attaching it to the six-year sentence imposed on the Level 5 felony conviction. We therefore affirm Burnworth's sentences and remand with instructions that the trial court attach the habitual offender enhancement to the sentence imposed on the Level 5 felony conviction.

[23] Affirmed and remanded.

Najam, J., and Barnes, J. concur.