

IN THE

# Court of Appeals of Indiana

Daniel Ryan,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

May 27 2026, 10:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

May 27, 2026

Court of Appeals Case No.
25A-CR-2839

Appeal from the Marion Superior Court

The Honorable Cynthia L. Oetjen, Judge

Trial Court Cause No.
49D30-2310-F1-29966

**Opinion by Judge DeBoer**
Judges Brown and Altice concur.

**DeBoer, Judge.**

## Case Summary

[1] Daniel Ryan appeals his convictions for two counts of Level 4 felony child molesting, which were labeled as Counts II and VI on the last amended charging instrument. He challenges his conviction on Count II by arguing it was not supported by sufficient evidence. He also argues his convictions on both counts violate substantive double jeopardy principles because his actions "constituted a single continuous crime." Appellant's Brief at 19. Finding sufficient evidence to support his conviction on Count II and that his convictions on both counts do not violate substantive double jeopardy, we affirm.

## Facts and Procedural History

[2] M.M. (born in 2010) lived at her grandmother's house from 2017 to 2019. Ryan, who was in a decades-long relationship with M.M.'s great aunt, lived next door. M.M. and her mother considered Ryan a part of their family, and M.M. and her siblings called him "Uncle Danny." Transcript at 23.

[3] One day, when M.M. was seven or eight years old, she was outside her grandmother's home with Ryan and his grandson next to a bonfire. Ryan told M.M. "to come over and give him a hug[,]" which M.M. did reluctantly because she "was uncomfortable around men." *Id.* at 71. As she hugged Ryan, he "put his hand below [her] waist and cupped underneath [her] buttocks . . . ." *Id.*

[4]     On another occasion when M.M. was eight years old, she was outside her grandmother's home playing on a teeter totter. Ryan came up behind her and "grabbed [her] by [her] elbow and . . . dragged [her] . . . towards [an] RV" that was parked on the properties. *Id.* at 74. As he did, "he told [M.M.] to come with him or else [she] would be in trouble." *Id.* After forcing her to climb into the RV, Ryan laid her "down on [her] back and . . . pulled [her] shirt up over [her] stomach[.]" *Id.* at 74. He told M.M. to take her shirt off the rest of the way. Once she had, he "put his hands over [her] breast and . . . on [her] stomach[,]" and "his hands ma[de] contact with [her] breasts[.]" *Id.* at 75. Ryan then "rolled [M.M.] over on [her] stomach" and used one hand to grab her hair, burying her face into a pillow. *Id.* at 76. With the other, he pulled down M.M.'s shorts. At some point, Ryan covered M.M.'s mouth with his hand and when she tried to bite him, he "slammed his hand deeper into [her] mouth." *Id.* at 77.

[5]     After removing M.M.'s shorts, Ryan took off his own, "pulled [M.M.'s] panties to the side[,]" and began rubbing his penis between her buttocks. *Id.* M.M. would later describe that "[i]t felt as if [she] was being [torn]" as Ryan's penis "was going in and out[,]" and she "felt like [she] was bleeding." *Id.* at 78-79. Ryan "told [her she] was tight," which made him angry. *Id.* at 79. Eventually, Ryan stopped, put his clothes back on before redressing M.M., and said "that if [she] told anyone [what happened, she] would be in trouble." *Id.* He then took her out of the RV, "brought [her] back to the playset[,] and had [her] sit back down where" he had found her. *Id.* at 79-80.

[6] M.M. did not disclose either of these incidents to anyone until May 2023, when she was admitted to Valle Vista for mental health treatment. By then, she was twelve years old. During the intake process, she told Valle Vista staff that she had been molested by her uncle, but no one from the facility followed up with her or her mother about that disclosure. Since there was no follow up, M.M. believed that "no one really cared about it, [because] of . . . how long ago it was." *Id.* at 82.

[7] A little more than a month after M.M. was discharged from Valle Vista, she witnessed a heated argument between her mother and Ryan's spouse over an unrelated matter. During that argument, her mother accused Ryan of molesting her when she was a child. Upon learning that Ryan had also molested her mother, M.M. felt "like a weight was being lifted off [her] chest[,]" which emboldened her to "tell [her] mom what happened." *Id.* at 84. So after hearing what her mother had said, M.M. added, "And he done [sic] it to me. He molested me, too." *Id.* at 40. Ryan, who was present to hear M.M.'s and her mother's accusations, responded only by "smiling." *Id.* at 27, 84.

[8] When her mother reported what M.M. said to law enforcement, the investigating officers scheduled a forensic interview with M.M. During that interview, M.M. said that Ryan had molested her more than once. Thereafter, the State charged Ryan with several offenses relating to M.M.'s disclosures, which, as last amended before trial, included two counts of Level 4 felony child

molesting in violation of Indiana Code section 35-42-4-3(b). Those counts (Counts II and VI) were identical in substance and alleged as follows:

> Between June 28, [2017[1]] and June 27, 2019, DANIEL RYAN did perform or submit to fondling or touching with M.M., a child under the age of fourteen years, with the intent to arouse or satisfy the sexual desires of DANIEL RYAN and/or M.M.

Appellant's Appendix Vol. 2 at 148-49.

[9] At a bench trial in September 2025, the State presented the testimonies of M.M. (aged fifteen at that time), her mother, the lead investigating officer, and the forensic interviewer who spoke with M.M. after her second disclosure. Those witnesses testified to the facts outlined above. After the State rested its case-in-chief, Ryan's counsel moved to dismiss one of the child molesting counts under Trial Rule 41(B), arguing the State had failed to prove "anything sexual about the groping by the campfire . . . ." Tr. at 102. In response, the State argued,

> [T]he first incident, the grabbing of the butt, was in fact a molest. We do believe there's three molests mentioned today, [but] only two have been charged. We will be moving forward on Count II with the touching of the breasts, and Count VI, the touching of her anus with the defendant's penis. So we do believe [we've met] our burden as to Counts II and [VI], because we're moving

---

[1] The charging information initially alleged that the Level 4 molestation offenses occurred between 2018 and 2019. However, after resting its case-in-chief at trial, the State moved to amend Counts II and VI by interlineation "to be from 2017 through 2019." Tr. at 100. The trial court granted that motion over Ryan's objection, and Ryan does not challenge that decision on appeal.

> forward on Count II as regarding the breasts and Count VI regarding the anus.

*Id.* at 103-04. Ryan countered that M.M. had testified about "two instances[:] one . . . by the campfire and one . . . in the RV." *Id.* at 105. According to the defense, "since there [were] two counts, one would assume that one is by the campfire, and one is in the RV." *Id.* To that, the State asserted it had intended to charge only "the breast and the touching of the anus[,]" and though M.M. described a third incident in her testimony, "the defendant does not get a benefit from having molested the victim more times than the charging information indicates." *Id.* The court agreed with the State and denied Ryan's motion to dismiss.

[10] Ryan, his spouse, and his daughter then testified for the defense, after which Ryan rested his case and the State presented no rebuttal evidence. After hearing the parties' closing arguments, the trial court found Ryan guilty of the child molesting offenses. At a sentencing hearing in October 2025, the court entered judgments of conviction on both counts and imposed concurrent sentences of six years in the Department of Correction, with four years suspended (two of which are to be served on probation). Ryan now appeals.[2]

---

[2] Along with the two Level 4 child molesting offenses, Ryan was found guilty of Level 5 felony kidnapping, Level 6 felony battery against a person less than fourteen years of age, and Class A misdemeanor intimidation. On appeal, Ryan only challenges his child molesting convictions.

## Discussion and Decision

## 1. Sufficiency of the Evidence

[11] Ryan first argues there was insufficient evidence to support his conviction on Count II. When reviewing a challenge to the sufficiency of the evidence, we are mindful that it is the fact-finder's role, not ours, "to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024) (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). Additionally, "[w]e consider only the evidence most favorable to" the conviction. *Id.* We will affirm unless no reasonable fact-finder could have found "the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)).

[12] To convict Ryan of Level 4 felony child molesting as alleged in Count II, the State was required to prove that he, "with a child under fourteen . . . years of age, perform[ed] or submit[ted] to any fondling or touching, of either the child or [himself], with intent to arouse or to satisfy the sexual desires of either the child or" himself. Ind. Code § 35-42-4-3(b). Ryan apparently concedes that M.M.'s testimony was sufficient to prove he touched her breasts, but he argues the State failed to prove he did so with "the intent to arouse or to satisfy sexual desires." Appellant's Br. at 15. According to Ryan, M.M.'s testimony that he "put his hands up by [her] breasts" and touched them was "vague" because it "did not specifically describe an action such as rubbing, stroking, squeezing, or

caressing . . . ." *Id.* So, he claims, "it is difficult to tell if M.M. [was] describing intentional or incidental contact." *Id.*

[13] Ryan's assertion that M.M.'s testimony could be construed as describing *either* intentional or incidental contact is no more than a request to reweigh the evidence, which we will not do. As noted above, it was the trial court's role, not ours, to determine whether the touching M.M. described was an intentional or incidental act. Furthermore, "[t]he element of intent of child molesting may be established by circumstantial evidence and inferred from the defendant's conduct and the natural and usual sequence to which such conduct usually points." *Rose v. State*, 36 N.E.3d 1055, 1062 (Ind. Ct. App. 2015). This Court has thus held that a fact-finder can reasonably infer a defendant's "intent to arouse or gratify his . . . sexual desires" based solely on evidence he "touch[ed] [a] young girl's breast underneath her shirt." *Id.* Here, the State is right that "sexual gratification [was], to say the least, a reasonable explanation for [Ryan's] behavior" based on the evidence that he forced M.M. into an RV, removed her shirt, and touched her bare breasts before "trying to penetrate her anus with his penis[.]" Appellee's Br. at 10. Accordingly, we affirm Ryan's conviction on Count II.

## 2. Substantive Double Jeopardy

[14] Ryan next argues that his "convictions for Count[s] II and VI . . . violate prohibitions against [substantive] Double Jeopardy." Appellant's Br. at 15. Substantive double jeopardy bars the State from subjecting a defendant "to

multiple convictions or punishments for the 'same offense' in a single trial." *Moyers v. State*, 227 N.E.3d 33, 38 (Ind. 2026) (quoting *Wadle v. State*, 151 N.E.3d 227, 238-39 (Ind. 2020)). Whether convictions violate substantive double jeopardy is a question of law that we review de novo. *Wadle*, 151 N.E.3d at 237.

### 2.1. What is the correct analytical framework?

Our Supreme Court has promulgated two frameworks for analyzing substantive double jeopardy claims. The first, articulated in *Wadle* and refined by *A.W. v. State*, 229 N.E.3d 1060 (Ind. 2024), "addresse[s] scenarios when 'a single criminal act or transaction violates multiple statutes with common elements.'" *Moyers*, 277 N.E.3d at 38 (quoting *Powell v. State*, 151 N.E.3d 256, 263 (Ind. 2020)). The second, expressed in *Powell*, "addresse[s] 'multiplicity,' which occurs 'when a single criminal act or transaction violates a single statute and results in multiple injuries.'" *Id.* (quoting *Powell*, 151 N.E.3d at 263).

The parties here disagree on whether Ryan's claim should be analyzed under *Wadle* or *Powell*. Ryan argued in his opening brief that *Wadle* should control—though he didn't explain why. The State asserted in its brief that we should apply *Powell* because Ryan "was convicted twice under the same subsection of the same statute," that is, Indiana Code section 35-42-4-3(b). Appellee's Br. at 10-11. And in his reply brief, Ryan suggested that **both** *Wadle* and *Powell* might apply under this Court's opinion in *White v. State*, 264 N.E.3d 99 (Ind. Ct. App. 2025).

[17] In *White*, a divided panel reasoned that section 35-42-4-3(b)'s use of the disjunctive phrase "perform *or* submit to" defines two distinct statutory offenses: (1) *performing* a prohibited act of fondling or touching and (2) *submitting to* such an act. 264 N.E.3d at 105. In the view of the *White* majority, *Powell* should control when a defendant is convicted "under the exact same statutory language" (*e.g.*, two counts of *performing* acts in violation of subsection (b)), while *Wadle* should control when a defendant is convicted "under differing statutory language" (*i.e.*, one count of *performing* and one count of *submitting to* such acts). *Id.* And because the charging information in *White* was ambiguous as to what exactly the defendant was accused of doing, this Court "threaded [the] needle by applying both tests." *Moyers*, 277 N.E.3d at 49 (Slaughter, J., dissenting) (citing *White*, 264 N.E.3d at 102-03).

[18] Ryan is correct that the charging instrument here suffers from a similar ambiguity as the information in *White*. In fact, both Count II and Count VI merely "tracked the statutory language" without "alleg[ing] any specific, delineating facts" or specifying exactly how Ryan violated subsection (b).[3] *White*, 264 N.E.3d at 102. But the State often charges crimes this way, *see id.* at 105 (citing examples), and we don't agree with *White* that in such cases we should undertake the burden of applying both *Wadle* and *Powell*. Instead, as the

---

[3] The irony, of course, is that we already know from our review of the record that Ryan was convicted of twice touching M.M. during a single episode of criminal conduct—thus presenting an obvious potential multiplicity problem under *Powell*. This exemplifies why "substantive double jeopardy claims might be resolved more efficiently" with "[a] framework that begins with the facts rather than abstract statutory inquiries . . . ." *Easter v. State*, ___ N.E.3d ___, 2026 WL 1205892, at *10 n.7 (Ind. Ct. App. 2026).

Supreme Court reminded us in *Moyers*, our primary task in reviewing substantive double jeopardy claims is to "carry out legislative intent as expressed in statute[.]" 277 N.E.3d at 45.

In *Moyers,* the Court explained how to decide which framework to apply "when a defendant's convictions stem from multiple violations of the same statute with differing enhancing circumstances or penalty levels." *Id.* at 36. According to *Moyers*, "the applicability of *Wadle* or *Powell* does not turn on whether the convictions arise from the same statute or from different statutes." *Id.* at 42. Instead, "the proper test depends on whether the convictions are for offenses stemming from one base offense or two." *Id.* And "[t]o illustrate the different ways our Legislature has defined offenses," *Moyers* "highlight[ed] three categories of criminal statutes." *Id.* at 40.

> **Category One** includes statutes that define a base offense and elevated offenses as a single statutory offense, rendering *Powell* the proper test. . . . **Category Two** includes statutes that define separate base offenses and, therefore, distinct statutory offenses, meaning *Wadle* applies. And **Category Three** includes statutes that create a base offense using alternative elements. These statutes must be read carefully to discern whether the Legislature intended to define one statutory offense (meaning *Powell* applies) or multiple (meaning *Wadle* applies).

*Id.* (emphasis added).

As suggested by *Moyers*, the child molesting statute, Indiana Code section 35-42-4-3, falls into Category Three. *See id.* at 42. Subsections (a) and (b) both "create . . . base offense[s] with alternative elements," placing the statute

squarely within that elusive category. *Id.* But the statute also shares some characteristics with Category Two, in that it defines more than one "distinct child molesting . . . offense[] . . . ." *Id.* (citing *Koziski v. State*, 172 N.E.3d 338, 341-42 (Ind. Ct. App. 2021), *trans. denied*). And like Category One statutes, both subsections (a) and (b) create elevated forms of their respective base offenses. So, given the statute's "complexity and nuance[,]" we must closely examine the relevant statutory language to establish whether the Legislature intended to create one or multiple base offenses under subsection (b). *Id.*

[21] As discussed in Section 1, section 35-42-4-3(b) makes it a crime for any person to,

> with a child under fourteen . . . years of age, perform[] or submit[] to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person . . . .

Though subsection (b) uses the disjunctive "or" five times, nothing in the statute's text or structure suggests the Legislature meant each of the thirty-two possible combinations of these alternative elements to be different "base offenses."[4] Rather, the alternatives describe different ways to commit one

---

[4] Each pair of alternative elements doubles the number of ways section 35-42-4-3(b) can be violated. The total number is therefore equal to 2 * 2 * 2 * 2 * 2—yielding thirty-two distinct ways a person can commit Level 4 felony child molesting.

offense: sexually motivated physical contact with a child.[5]  This Court recently reached a similar conclusion when analyzing the four alternative elements of Level 3 felony rape under Indiana Code section 35-42-4-1(a)(1)-(4).  *Easter v. State*, ___ N.E.3d ___, 2026 WL 1205892, at *4 n.1 (Ind. Ct. App. 2026).  Because "the inability to consent is a 'unifying theme'" of those elements, the *Easter* majority reasoned they do not "establish[] distinct base offenses of rape."  *Id.* (quoting *Frye v. State*, 240 N.E.3d 727, 733 (Ind. Ct. App. 2024)).  We likewise do not construe the alternative elements in section 35-42-4-3(b) as separate base offenses of Level 4 felony child molesting.  Consequently, Ryan's dual convictions under subsection (b) were for a single base offense, so we apply *Powell* to his substantive double jeopardy claim.

### 2.2. Applying Powell *to Ryan's Convictions*

[22]  In *Powell*, our Supreme Court articulated a two-part test to determine whether a criminal statute "permits the 'fragmentation' of a course of criminal conduct into two or more punishable offenses."  *Moyers*, 277 N.E.3d at 43 (quoting *Powell*, 151 N.E.3d at 264).  At step one, we "determine the 'unit of prosecution' for the statutory offense at issue."  *White*, 264 N.E.3d at 105 (quoting *Powell*, 151 N.E.3d at 264).  If the statute does not explicitly define the unit of prosecution, "we identify [it] by determining whether the statute is

---

[5] This contrasts with subsection (a) of the same statute, which defines numerous distinct statutory offenses. *Koziski*, 172 N.E.3d at 341-42.

'conduct-based' or 'result-based.'" *Moyers*, 277 N.E.3d at 43 (quoting *Powell*, 151 N.E.3d at 265). As summarized by *Moyers*,

> A conduct-based statute defines an offense by certain actions or behavior, and the crime is complete once the offender engages in the prohibited conduct, **regardless** of whether that conduct produces a specific result. Under such statutes, a single discrete incident can be the basis for only one conviction. By contrast, a result-based statute defines an offense by the defendant's actions **and** the results or consequences of those actions, thus permitting multiple convictions when multiple consequences flow from a single criminal act.

*Id.* (internal quotation marks and citations omitted). If we can identify the unit of prosecution, "we turn to the facts to determine how many discrete offenses the evidence supports." *Id.* But if the unit of prosecution is ambiguous, we proceed to *Powell's* second step. 151 N.E.3d at 264.

[23] At step two of *Powell*, we "must determine whether the facts—as presented in the charging instrument and as adduced at trial—indicate a single offense or whether they indicate distinguishable offenses." *Id.* We do so by asking "whether the defendant's actions [were] 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'" *Id.* (quoting *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010), *reh'g denied*); *see also Moyers*, 277 N.E.3d at 43 (explaining step two of *Powell* "effectively absorbs the common-law continuous crime doctrine"). "If the defendant's criminal acts are sufficiently distinct, then multiple convictions

may stand; but if those acts are continuous and indistinguishable, a court may impose only a single conviction." *Powell*, 151 N.E.3d at 264-65.

### 2.2.1. The Unit of Prosecution

The first step to resolving Ryan's double jeopardy claim is determining whether section 35-42-4-3(b) identifies an unambiguous unit of prosecution. "A 'unit of prosecution,' in simple terms, is the specific act or conduct our Legislature intended to treat as one punishable offense under a criminal statute." *Moyers*, 277 N.E.3d at 43. We agree with *White* that section 35-42-4-3(b) is a conduct-based statute, and its unit of prosecution is unambiguous. *White*, 264 N.E.3d at 106. That is, its "'unit of prosecution' . . . is the conduct of 'any fondling or touching' of 'a child' or the defendant with the requisite mens rea." *Id.* This "simply means that, for each charge under [subsection (b)], the State must prove a discrete act; it does not mean that the State cannot bring multiple charges against a defendant . . . for multiple, discrete acts." *Id.*

However, we are less confident than the *White* majority about what our Supreme Court wants us to do next. After identifying subsection (b)'s unambiguous unit of prosecution, *White* proceeded to "the second step of the *Powell* test . . . ." *Id.* But our Supreme Court has twice instructed us to turn to step two only if we find that the statute's unit of prosecution is "ambiguous." *See Powell*, 151 N.E.3d at 264; *Moyers*, 277 N.E.3d at 43. Most recently, in *Moyers*, the Court made clear that when, as here, the unit of prosecution is unambiguous, the reviewing court "need[s] just *Powell's* first step . . . ." 277 N.E.3d at 44. And—purportedly at that first step—we can examine the

evidence "to determine how many discrete offenses the evidence supports." *Id.* at 43.

[26] We are not sure how examining the facts at step one differs in any material respect from the continuous crime analysis at step two. The continuous crime doctrine focuses on "whether the defendant's actions [were] 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'" *Id.* (quoting *Powell*, 151 N.E.3d at 264). Though the *Moyers* Court said it didn't need step two's continuous crime analysis, it nonetheless weighed many of the same considerations to determine whether the defendant there "imposed only one period of [criminal] confinement[.]" *Id.* at 44. Answering that question, according to the Court, required it "to 'define the temporal span' of the offense" and determine whether the victim "was continuously confined." *Id.* (quoting *Bartlett v. State*, 711 N.E.2d 497, 500 (Ind. 1999)). As the *Easter* panel observed, *Moyers* appears to suggest the continuous crime doctrine remains relevant even "when a statute's unit of prosecution is deemed unambiguously conduct-based at [s]tep [one]." 2026 WL 1205892, at *6 n.3.

[27] We follow *Easter's* lead and apply the continuous crime doctrine to determine "whether the evidence shows [Ryan] committed one or two discrete acts of" Level 4 felony child molesting. *Moyers*, 277 N.E.3d at 44.

## 2.2.2. Ryan performed at least two discrete acts of touching.

As Ryan correctly notes, *Powell* does not prohibit the State from obtaining multiple convictions under section 35-42-4-3(b) so long as it proves the defendant engaged in "multiple, discrete acts." *White*, 264 N.E.3d at 106. Ryan argues the State failed to do so here because "[t]he fondling from the breast[s] to the buttocks was a continuous flow." Appellant's Br. at 8. But this assertion belies M.M.'s testimony. She testified that after Ryan touched her breasts, he flipped her over onto her stomach, shoved her head into a pillow, covered her mouth with his hand, and removed her shorts. Only then did he undress himself, pull her underwear to the side, and rub his penis on her buttocks.

While Ryan's touching of M.M.'s breasts and buttocks occurred close in time and during the same course of criminal conduct, they were *not* performed simultaneously or as part of one continuous action. *C.f. Flores v. State*, 114 N.E.3d 522, 524 (Ind. Ct. App. 2018) (finding two convictions for Level 4 felony child molesting violated the continuous crime doctrine when the defendant "put his penis between [a child's] butt cheeks *while* he touched her vagina over her underwear") (emphasis added); *Chavez v. State*, 988 N.E.2d 1226, 1230 (Ind. Ct. App. 2013) (finding a defendant's actions "constitute[ed] a 'single transaction'" when he "inserted his tongue into [a child's] mouth" and "*[w]hile* kissing her, . . . placed his hand, over [her] clothes, on her vagina") (quoting *Duvall v. State*, 978 N.E.2d 417, 428 (Ind. Ct. App. 2012), *trans. denied*) (emphasis added), *trans. denied*. Unlike the simultaneous acts in *Flores* and

*Chavez*, Ryan's acts of touching were sufficiently distinct in character and time such that both of his convictions for Level 4 felony child molesting convictions may stand under *Powell*.

## Conclusion

For these reasons, we affirm Ryan's convictions.

Affirmed.

Brown, J., and Altice, J., concur.

ATTORNEYS FOR APPELLANT

Talisha Griffin
Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Daniel Frohman
Deputy Attorney General
Indianapolis, Indiana